THE STATE *ex rel.* BEELER, SCHAD AND DIAMOND, P.C., Plaintiff-Appellee and Relator-Appellant, v. TARGET CORPORATION *et al.*, Defendants-Appellees.—THE STATE *ex rel.* BEELER, SCHAD AND DIAMOND, P.C., Plaintiff-Appellee and Relator-Appellant, v. WAL-MART.COM, INC., *et al.*, Defendants-Appellees.

First District (5th Division) Nos. 1—04—2001, 1—04—3159 cons.

Opinion filed August 25, 2006.—Rehearing denied October 16, 2006.

Vanasco, Genelly & Miller (David A. Genelly and James E. Judge, of counsel), and Huff & Gaines, Ltd. (John L. Huff and Elvis D. Gonzalez, of counsel), both of Chicago, for relator-appellant.

Lisa Madigan, Attorney General, of Chicago (Chaka M. Patterson and Charles F. Godbey, Assistant Attorneys General, of counsel), for the People.

Katten Muchin Zavis Rosenman, of Chicago (Sheldon T. Zenner, Jonathan L. Marks, David J. Stagman, and Kathy P. Josephson, of counsel), for appellees.

JUSTICE NEVILLE delivered the opinion of the court:

This consolidated appeal was commenced when Beeler, Schad & Diamond, P.C., the relator, or whistleblower as that term is defined in the Whistleblower Reward and Protection Act (740 ILCS 175/4(b)(2) (West 2002)) (Act) filed two complaints and blew the whistle on both Target and Wal-Mart, alleging that they created Internet subsidiaries to avoid their duty to collect and remit use taxes to the State of Illinois. The State was granted leave to intervene in both lawsuits, and after the Target and Wal-Mart lawsuits were consolidated, the State filed a motion to dismiss the relator. The State's motion to dismiss was granted and the relator appealed. The relator presents the following issues for our review: (1) whether the trial court erred when it found that the relator's complaints were based upon public disclosures; and (2) whether the trial court erred when it found that the relator was not an original source within the purview of the Act. We affirm.

## BACKGROUND

On December 28, 2001, Beeler, Schad & Diamond, P.C. (relator), filed its complaint, numbered 01 L 016658, against the defendants, Target Corporation, Target.Direct, LLC, and MarshallFields.Direct, LLC. On April 26, 2002, the relator filed a second complaint, numbered 02 L 005278, against two more defendants, Wal-Mart.com, Inc., and Wal-Mart Stores, Inc. In these complaints, the relator alleged that both Target and Wal-Mart sold goods over the Internet to the residents of Illinois but failed to collect use tax on those sales.

On January 7, 2003, the State intervened and subsequently took over the cases pursuant to section 4(b)(2) of the Act. 740 ILCS 175/4(b)(2) (West 2002). On January 30, 2003, the State filed its first amended complaint.

On January 20, 2004, the State filed a motion to dismiss the rela-

tor as a party plaintiff in both lawsuits because the relator's claims were based upon public disclosures for which the relator was not the original source. The State attached a 2000 article to both motions to dismiss that was written by Allison Bennett and published by the Bureau of National Affairs, Inc. (BNA). The State also provided the trial court with two April 2000 articles published in the Washington Post and Las Vegas Review-Journal summarizing Target's reaction to a report from a congressional advisory commission on electronic commerce. The articles called for Congress to "level the playing field" between online merchants and traditional retailers. The State argued before the trial court that the BNA article demonstrated that, although the relator may have had direct knowledge of the defendants' scheme, its knowledge was not independent of the prior public disclosure.

The relator provided the court with an affidavit from Stephen Diamond, a director and shareholder of Beeler, Schad & Diamond, P.C. Diamond's affidavit averred that he "neither read nor saw any of the three articles (BNA, Washington Post, Las Vegas Review[-]Journal), attached to the State's motions until April 2003 when Target submitted them in its 'Appendix to Defendant's Motion to dismiss.' " Diamond also averred in the affidavit that he investigated certain of the claims he ultimately brought while merely directing the investigations of other claims.

The State, Wal-Mart and Target argued that section 4(c)(2)(A) of the Act authorizes the State to move to dismiss the relator's actions provided the State gives notice of the motion to the person initiating the action and the court provides the person with an opportunity to be heard. 740 ILCS 175/4(c)(2)(A) (West 2002). On June 24, 2004, the circuit court entered an order granting the State's motion to dismiss the relator as a party plaintiff in both lawsuits for lack of subject matter jurisdiction. The State's motion did not seek to dismiss the State as a party in the first amended complaint. The June 24, 2004, order also did not contain a Supreme Court Rule 304(a) finding that there was "no just reason for delaying either enforcement or appeal of the order." 155 Ill. 2d R. 304(a).

On July 6, 2004, the relator filed a notice of appeal from the June 24, 2004, dismissal order, which dismissed the relator as a party plaintiff in case numbers 01 L 16658 and 02 L 05278. This notice of appeal was filed pursuant to Supreme Court Rule 301 (155 Ill. 2d R. 301).

On September 24, 2004, the circuit court entered a *nunc pro tunc* order that vacated the June 24, 2004, order. In the September 24, 2004, order the circuit court again dismissed the relator as a party plaintiff in both cases (cases numbered 01 L 16658 and 02 L 05278)

with prejudice. The September 24, 2004, order did not contain a Supreme Court Rule 304(a) finding that there was "no just reason for delaying either enforcement or appeal." 155 Ill. 2d R. 304(a).

On September 27, 2004, the State filed motions for a voluntary nonsuit of its complaints, pursuant to section 2—1009 of the Code of Civil Procedure (735 ILCS 5/2—1009 (West 2004)). The circuit court entered two orders, one dismissing the State's complaint against Target Corporation, Target.Direct, LLC, and MarshallFields.Direct, LLC, and a second order dismissing the State's complaint against Wal-Mart Stores, Inc., and Wal-Mart.com, Inc., without prejudice.

On October 14, 2004, the circuit court entered two orders that added a Supreme Court Rule 304(a) finding that there was "no just reason for delaying either enforcement or appeal" to the September 24, 2004, order. 155 Ill. 2d R. 304(a). Thereafter, on October 19, 2004, the relator filed another notice of appeal from the September 24, 2004, September 27, 2004, and October 14, 2004, orders, and on October 26, 2004, the appeals were consolidated in the appellate court.

## ANALYSIS

### Jurisdiction

■ The State filed a motion to dismiss this appeal. Before reaching the merits of a case, the appellate court has a duty to determine whether it has jurisdiction in all appeals filed before it. *Jackson v. Alverez*, 358 Ill. App. 3d 555, 558 (2005), citing *In re Marriage of Betts*, 159 Ill. App. 3d 327, 330 (1987). Where a trial court enters judgment as to fewer than all of the parties or claims, it must do so pursuant to Supreme Court Rule 304. 155 Ill. 2d R. 304(a). The June 24, 2004, order entered in this case was not an appealable order because it was a judgment as to fewer than all parties or claims. Moreover, once the relator was dismissed as a party, the State's two lawsuits against Target and Wal-Mart, who are parties, were still pending in the circuit court, and the June 24, 2004, order did not contain "an express written finding that there is no just reason for delaying either enforcement or appeal or both." 210 Ill. 2d R. 304(a).

It is generally understood that "[t]he jurisdiction of the appellate court attaches upon the proper filing of a notice of appeal. When the notice of appeal is filed, the appellate court's jurisdiction attaches *instanter*, and the cause is beyond the jurisdiction of the trial court." *Daley v. Laurie*, 106 Ill. 2d 33, 37 (1985), citing *People v. Carter*, 91 Ill. App. 3d 635, 638 (1980). However, "if the order appealed from is not final and appealable, the notice of appeal neither deprives the trial court of jurisdiction to proceed with the case nor vests the appellate

court with jurisdiction to review." *Welch v. City of Evanston*, 181 Ill. App. 3d 49, 55 (1989), citing *King City Federal Savings & Loan Ass'n v. Ison*, 80 Ill. App. 3d 900, 902 (1980).

The July 6, 2004, notice of appeal was an appeal from the trial court's June 24, 2004, order. The July 6, 2004, notice of appeal did not divest the trial court of jurisdiction because the June 24, 2004, order was not an appealable order. With claims still pending against Target and Wal-Mart, the June 24, 2004, order, in order to be appealable, would have had to include the Supreme Court Rule 304(a) finding that "there is no just reason for delaying either enforcement or appeal." 155 Ill. 2d R. 304(a). Because the July 6, 2004, notice of appeal did not divest the trial court of jurisdiction, the trial court still had jurisdiction to enter the September 24, 2004, September 27, 2004, and October 14, 2004, orders. In addition to dismissing the relator as a party plaintiff in both cases with prejudice, the September 24, 2004, order vacated the June 24, 2004, order. The September 27, 2004, order also nonsuited the State's claims; therefore, it disposed of all remaining claims and parties and it was a final and appealable order. The October 14, 2004, order amended the September 24, 2004, order by adding the Rule 304(a) language, but this was unnecessary because the September 27, 2004, order was a final order. Finally, the October 19, 2004, notice of appeal, filed pursuant to Supreme Court Rules 301 and 304(a) (155 Ill. 2d Rs. 301, 304(a)), appealed from the September 24, 2004, and September 27, 2004, orders and since the September 27, 2004, order was a final order, the appellate court acquired jurisdiction over the case. Accordingly, the appellate court has jurisdiction to review the orders appealed from in the October 19, 2004, notice of appeal.

## Standard of Review

The trial court's dismissal of the relator's complaints was entered pursuant to section 2—619 of the Code of Civil Procedure. 735 ILCS 5/2—619 (West 2004). Dismissals pursuant to section 2—619 admit the legal sufficiency of the complaint while asserting a defect or defense that defeats the claim. *Wallace v. Smyth*, 203 Ill. 2d 441, 447 (2002). We conduct a *de novo* review of the trial court's dismissal pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 2004)). *Wallace*, 203 Ill. 2d at 447.

## Jurisdictional Bar

■ In order to answer the question presented in this appeal, we must review the Whistleblower Reward and Protection Act. 740 ILCS 175/1 *et seq.* (West 2002). After reviewing the Act, relevant case law and other authorities, we find that the plaintiffs are *qui tam* plaintiffs

and not whistleblowers[1] because they were not employees. *Scachitti v. UBS Financial Services*, 215 Ill. 2d 484, 494 (2005), citing R. Fischer, *Qui Tam Actions: The Role of the Private Citizen in Law Enforcement*, 20 UCLA L. Rev. 778, 780 (1973) ("a '*qui tam* action' is an action brought under a statute authorizing an informant to bring a civil action to recover a penalty for the commission or omission of a certain act and providing that a part of the penalty be paid to the informer"). According to *Scachitti*, just because the plaintiffs are *qui tam* plaintiffs, the State is still empowered by the Act to place limitations on the participation of *qui tam* plaintiffs in a lawsuit. *Scachitti*, 215 Ill. 2d at 505, citing 740 ILCS 175/4(c)(2)(A), (c)(2)(B) (West 2002).

While *Scachitti* discusses the Act and the relationship between the State and a whistleblower in terms of who is the real party in interest and who has the power to dismiss whistleblower actions, neither *Scachitti* nor any other Illinois case has interpreted section 4(e)(4)(A) of the Act. 740 ILCS 175/4(e)(4)(A) (West 2002). However, the federal courts have interpreted section 3730 of the federal False Claims Act (FCA) (31 U.S.C. §3730 (2000)),[2] which is virtually identical to section 4(e)(4) of the Act (740 ILCS 175/4(e)(4) (West 2002)).[3]

Because the language in the FCA is virtually identical to the language in the Act, in order to understand the Illinois Act, we review federal cases that have examined and analyzed the FCA. In *United States ex rel. Matthews v. Bank of Farmington*, 166 F.3d 853, 857-58 (7th Cir. 1999), the court explained the origins of the FCA:

"The False Claims Act was a Civil War statute, passed in 1863,

---

[1]According to the Illinois Supreme Court in *Scachitti*, " 'Whistleblower statutes' are \*\*\* generally designed to protect an employee from retaliation for disclosure of an employer's misconduct." *Scachitti*, 215 Ill. 2d at 495, citing 5 ILCS 395/1 (West 2002) and Black's Law Dictionary 1627 (8th ed. 1999).

[2]Section 3730(e)(4)(A) provides that "[n]o court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." 31 U.S.C. §3730(e)(4)(A) (2000).

[3]Section 4(e)(4)(A) of the Illinois Whistleblower Act provides that "[n]o court shall have jurisdiction over an action under this Section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a legislative, administrative, or Auditor General's report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." 740 ILCS 175/4(e)(4) (West 2002).

originally to enable the federal government to punish and deter the fraudulent claims of war profiteers. It provided criminal and civil penalties for presenting a false claim for payment against the United States. *See* S. Rep. No. 99—345, at 8 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5273. From the very first, the statute included a *qui tam* provision. The term comes from the Latin expression, *qui tam pro domino rege quam pro se ipso in hac parte sequitur* ('Who brings the action for the King as well as for himself'). A *qui tam* lawsuit is brought by a private party or 'relator' who alleges fraud upon the government. If the claim is proven, the relator receives a percentage of the recovery under the current statute, from 10% to 30%. *See* 31 U.S.C. §3730(d). The relator serves as a sort of private attorney general. The *qui tam* provision is based upon the idea 'that one of the least expensive and most effective means of preventing frauds upon the Treasury is to make the perpetrators of them liable to actions by private persons acting … under the strong stimulus of personal ill will or the hope of gain.' " *Matthews*, 166 F.3d at 857-58, quoting *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 541 n.5, 87 L. Ed. 443, 448 n.5, 63 S. Ct. 379, 383 n.5 (1943).

The FCA was amended in 1986 " 'to encourage any individual knowing of Government fraud to bring that information forward.' " *Matthews*, 166 F.3d at 858, quoting S. Rep. No. 99—345, at 2 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5266-67. Among the congressional aims of the FCA and the 1986 amendments was "to reward private individuals who take significant personal risks to bring wrongdoing to light, to break conspiracies of silence among employees of malfeasors, and to encourage whistleblowing and disclosure of fraud." *Matthews*, 166 F.3d at 858. While Congress intended the 1986 amendments to continue to encourage whistleblowers to come forward with information, it also intended to prevent opportunistic and parasitic lawsuits. *Matthews*, 166 F.3d at 858, citing *Cooper v. Blue Cross & Blue Shield of Florida, Inc.*, 19 F.3d 562, 565 (11th Cir. 1994); see also *United States ex rel. Gear v. Emergency Medical Associates of Illinois, Inc.*, 436 F.3d 726, 728 (7th Cir. 2006).

In *Gear*, the Seventh Circuit Court of Appeals held that "[w]e have surmised that the word 'jurisdiction' in the [FCA] statute refers not to the power of the court, but to the right of a particular *qui tam* plaintiff to represent the government." *Gear*, 436 F.3d at 728. "In context, the word appears to mean that once information becomes public, only the Attorney General and a relator who is an 'original source' of the information may represent the United States. This does not curtail the categories of disputes that may be resolved (a real 'jurisdictional' limit) but instead determines who may speak for the

United States on a subject, and who if anyone gets a financial reward." *Gear*, 436 F.3d at 728, citing *United States ex rel. Fallon v. Accudyne Corp.*, 97 F.3d 937, 941 (7th Cir. 1996).

Both section 3730(e)(4)(A) of the FCA and the virtually identical section 4(e)(4)(A) of the Act provide a public disclosure bar unless the person bringing the action is brought by the Attorney General or by a person who is an original source of the information. 31 U.S.C. §3730(e)(4)(A) (2000); 740 ILCS 175/4(e)(4)(A) (West 2002). The Act defines an "original source" as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the State before filing an action under this Section which is based on the information." 740 ILCS 175/4(e)(4)(B) (West 2002). The FCA provides a virtually identical definition for an original source, defining an "original source" as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. §3730(e)(4)(B) (2000). Therefore, according to the Act, once the court has determined that a public disclosure has been made, it must then determine whether the relator is the original source. *Matthews*, 166 F.3d at 859, citing *Cooper*, 19 F.3d at 565 n.4.

On appeal, the relator maintains that it was an original source of the information upon which its fraud claims were based. The relator also maintains that the public disclosure bar of the Act only applies to parasitic actions but does not bar an action where the plaintiff is an original source, *i.e.*, a whistleblower who bases his action on information where his knowledge is direct and independent of any public disclosure and the information is provided to the government before filing a complaint. The relator also maintains that it was an original source and that the trial court ignored the relator's contention that the information upon which the complaints were based was independent of any preexisting news media disclosures.

The State argues (1) that information in the relator's complaints was in the public domain and publicly disclosed, and (2) that the relator was not an original source because the government was not alerted to the alleged fraud prior to the information being placed in the public domain. Wal-Mart also argues that the information upon which the relator based its two complaints was publicly disclosed and that the relator is not an original source of that information. According to Wal-Mart and Target, the trial court correctly found that the facts underlying the relator's complaint were previously publicly disclosed.

The trial court based its jurisdictional inquiry on *United States ex*

*rel. Fine v. MK-Ferguson Co.*, 99 F.3d 1538 (10th Cir. 1996), which provides four central questions to be asked when determining whether the court has jurisdiction under the FCA. Those questions are: "(1) whether the alleged 'public disclosure' contains allegations or transactions from one of the listed sources;[4] (2) whether the alleged disclosure has been made 'public' within the meaning of the False Claims Act; (3) whether the relator's complaint is 'based upon' this 'public disclosure'; and, if so, (4) whether the relator qualifies as an 'original source' under section 3730(e)(4)(B). If the court were to answer 'no' to any of the first three questions, its inquiry ends at that point and the *qui tam* action proceeds. The last inquiry, whether the relator is an original source, is necessary only if the answers to each of the first three questions is 'yes,' indicating the relator's complaint is based upon a specified public disclosure." *MK-Ferguson Co.*, 99 F.3d at 1544, citing *United States ex rel. Precision Co. v. Koch Industries, Inc.*, 971 F.2d 548, 551, 552, 552 n.2 (10th Cir. 1992), *cert. denied*, 507 U.S. 951, 122 L. Ed. 2d 742, 113 S. Ct. 1364 (1993).

### The Public Disclosure of Transactions in the News Media

The trial court considered the BNA article as well as other articles in the news media, including the Washington Post, the Las Vegas Review-Journal, the San Francisco Chronicle, PC-Week Magazine and the U.S. News and World Report. The trial court also considered Target and Wal-Mart's argument that there were multiple public disclosures in addition to the BNA article. As the trial court correctly observed, the Act does not define the term "public" in the context of a "public disclosure." "In the absence of a statutory definition, a term within a statute must be given its ordinary and popularly understood meaning." *Wauconda Fire Protection District v. Stonewall Orchards, LLP*, 214 Ill. 2d 417, 430 (2005), citing *In re D.F.*, 201 Ill. 2d 476, 496 (2002). Although it has not been defined in the Act, the trial court found that the term "news media" has been defined by the Illinois legislature in section 8—902(B) of the Code of Civil Procedure, commonly known as the "reporter's Privilege Act," as any newspaper or other periodical issued at regular intervals whether in print or electronic format and having a general circulation. 735 ILCS 5/8—902(b) (West 2004). In addition to the BNA article, the trial court found that the Washington Post, the Las Vegas Review-Journal, the San Francisco Chronicle, PC-Week Magazine and the U.S. News and World Report articles come

---

[4]The listed sources involve "the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media." 31 U.S.C. §3730(e)(4)(A) (2000).

within the purview of the definition for news media. Accordingly, we hold (1) that the trial court correctly characterized the aforementioned newspapers or periodicals as news media, and (2) that the trial court correctly found that the transmission of the information in the news media regarding Target's and Wal-Mart's Internet commerce activities constitutes a public disclosure in the media.

## "Based Upon"

Next, we must determine whether the relator's claims are "based upon" the public disclosures. "As a matter of common usage, the phrase 'based upon' is properly understood to mean 'supported by.' In this context, an FCA *qui tam* action even partly based upon publicly disclosed allegations or transactions is nonetheless 'based upon' such allegations or transactions." *United States ex rel. Precision Co. v. Koch Industries, Inc.*, 971 F.2d 548, 552 (10th Cir. 1992). In addition to "supported by," the federal courts have also held that "based upon" can mean "substantially similar to." *United States ex rel. Mistick PBT v. Housing Authority*, 186 F.3d 376, 386 (3d Cir. 1999). This is considered to be the majority view among the federal circuits. See *Minnesota Ass'n of Nurse Anesthetists v. Allina Health System Corp.*, 276 F.3d 1032, 1042-43 (8th Cir. 2002); *Matthews*, 166 F.3d at 865-66; *Cooper*, 19 F.3d at 568; *Precision*, 971 F.2d at 551-54; *United States ex rel. Stinson v. Prudential Insurance Co.*, 944 F.2d 1149, 1160-61 (3d Cir. 1991); *United States ex rel. LeBlanc v. Raytheon Co.*, 874 F. Supp. 35, 38-41 (D. Mass. 1995).

A different understanding of the phrase "based upon" may be found in *Matthews*. *Matthews* holds that the phrase "based upon" is better interpreted as meaning "derived from." *Matthews*, 166 F.3d at 863. By interpreting "based upon" to mean "derived from," *Matthews* allows for the filing and prosecution of actions where the action is similar or identical to publicly disclosed information that was derived from some source other than the public disclosure. *Matthews*, 166 F.3d at 863. According to *Matthews*, such actions derived from a source other than the publicly disclosed information would not be parasitic. *Matthews*, 166 F.3d at 863. The *Matthews* court points out that its interpretation is a minority view among the federal circuits that have addressed the issue. *Matthews*, 166 F.3d at 863.

The trial court rejected the "derived from" interpretation because it held that the original source exception to the jurisdictional bar would be rendered superfluous thereunder. The trial court held that a relator could not be the original source under this interpretation because, whether or not the relator's knowledge was direct, it would not be independent of the public disclosure. As a result, the trial court

took the majority view that "based upon" means "supported by" or "substantially similar to," because this approach does not render any of the Act's provisions superfluous. We adopt the majority view in order to give effect to the entire Act. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 503-04 (2000), citing *Boaden v. Department of Law Enforcement*, 171 Ill. 2d 230, 237 (1996). All provisions of statutory enactments are viewed as a whole and no words should be construed in isolation. *Michigan*, 191 Ill. 2d at 504. "In construing a statute, courts presume that the General Assembly, in the enactment of legislation, did not intend absurdity, inconvenience, or injustice." *Michigan*, 191 Ill. 2d at 504, citing *Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350, 362-63 (1986). "We must construe the statute so that each word, clause, and sentence, if possible, is given a reasonable meaning and not rendered superfluous ([*A.P. Properties, Inc. v. Goshinsky*, 186 Ill. 2d 524, 532 (1999)]), avoiding an interpretation which would render any portion of the statute meaningless or void (*McNamee v. Federated Equipment & Supply Co.*, 181 Ill. 2d 415, 423 (1998))." *Sylvester v. Industrial Comm'n*, 197 Ill. 2d 225, 232 (2001). Accordingly, we find, following the majority rule, that the allegations in the relator's complaints were "based upon" the BNA article, as well as the articles in the Washington Post, the Las Vegas Review-Journal, the San Francisco Chronicle, PC-Week Magazine and the U.S. News and World Report, because the allegations in the relator's complaints are "supported by" or "substantially similar to" the previously publicly disclosed information, which is identical to or, at least, substantially similar to the relator's claims.

## Original Source

Having determined that the allegations in the relator's complaints were "based upon" the information in the media, we must determine whether the relator was the original source of the information. Because we have identified the information in the amended complaint as having been supported by or substantially similar to the information that was publicly disclosed, the only way to escape the public disclosure bar is for the relator to be the original source of the information. *Gear*, 436 F.3d at 728. As previously explained, the Act defines an "original source" as "an individual who has direct *and* independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the State before filing an

action under this Section which is based on the information." (Emphasis added.) 740 ILCS 175/4(e)(4)(B) (West 2000).[5]

The federal circuits are split over the question of what a relator must do in order to be considered an original source. There are now three tests that have been applied in the different federal circuits. The first test, widely considered the majority view, applies a strict construction of the language of section 3730(e)(4)(B) of the FCA. 31 U.S.C. §3730(e)(4)(B) (2000). The strict constructionist approach is based upon the idea that " '[t]he starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.' " *Precision*, 971 F.2d at 552, quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 64 L. Ed. 2d 766, 772, 100 S. Ct. 2051, 2056 (1980), and citing *Federal Deposit Insurance Corp. v. Canfield*, 967 F.2d 443, 445 (10th Cir. 1992). *Precision* also held that " '[u]nless the statutory language is ambiguous or would lead to absurd results, the plain meaning of the statute must control.' " *Precision*, 971 F.2d at 552, quoting *United States ex rel. Williams v. NEC Corp.*, 931 F.2d 1493, 1498 (11th Cir. 1991), and citing *Glover Construction Co. v. Andrus*, 591 F.2d 554, 559 (10th Cir. 1979), *aff'd*, 446 U.S. 608, 64 L. Ed. 2d 548, 100 S. Ct. 1905 (1980).

The plain language of section 3730(e)(4)(B) provides that " 'original source' means an individual who has direct *and* independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." (Emphasis added.) 31 U.S.C. §3730(e)(4)(B) (2000). The majority of the federal circuits have adopted this view, holding that "[t]he word 'direct' is usually interpreted as 'marked by absence of intervening agency,' *Stinson*, 944 F.2d at 1160, while 'independent knowledge' is not 'dependent on public disclosure.' " *United States ex rel. McKenzie v. Bellsouth Telecommunications, Inc.*, 123 F.3d 935, 941 (6th Cir. 1997), quoting *Houck v. Folding Carton Administration Committee*, 881 F.2d 494, 505 (7th Cir. 1989), *cert. denied*, 494 U.S. 1027, 108 L. Ed. 2d 609, 110 S. Ct. 1471 (1990). Thus, the majority of the federal circuits only require direct and independent knowledge, and require that the relator voluntarily provide the information to the government before filing a lawsuit. *Minnesota*, 276 F.3d at 1042-43; *Matthews*, 166 F.3d at 865-66; *Precision*, 971 F.2d at 551-54; *Stinson*, 944 F.2d at 1160-61; *Raytheon*, 874 F. Supp. at 38-41; *Cooper*, 19 F.3d at 568.

---

[5]The FCA definition of "original source" is found in section 3730(e)(4)(B). 31 U.S.C. §3730(e)(4)(B) (2000).

The second test employs the same elements as the first test, with the additional requirement that the relator must provide the information to the government prior to any public disclosure. *McKenzie*, 123 F.3d at 942 ("We find it difficult to understand how one can be a 'true whistleblower' unless she is responsible for alerting the government to the alleged fraud before such information is in the public domain"); *United States ex rel. Findley v. FPC-Boron Employees' Club*, 105 F.3d 675, 690-91 (D.C. Cir. 1997).

The third test begins with the same elements as the first test, with the additional element that the relator must be the source to the entity that publicly disclosed the information upon which the lawsuit is based. *United States ex rel. Dick v. Long Island Lighting Co.*, 912 F.2d 13, 16-18 (2d Cir. 1990); *United States ex rel. Wang v. FMC Corp.*, 975 F.2d 1412, 1418 (9th Cir. 1992), citing *Dick*, 912 F.2d at 16-18.

In the absence of an Illinois definition of "original source," we note that the language of the Act is clear and unambiguous. Therefore, after surveying federal case law, we adopt the view of the majority of the federal circuits: the relator must have direct and independent knowledge of the information on which the allegations in the complaint are based and voluntarily provide the information to the government before filing a complaint. See *Minnesota*, 276 F.3d at 1042-43; *Matthews*, 166 F.3d at 858-66; *Cooper*, 19 F.3d at 568; *Precision*, 971 F.2d at 551-54; *Stinson*, 944 F.2d at 1160-61.

The relator argues that the trial court erred in ignoring the affidavit in support of its complaint. According to the relator, this affidavit is crucial because (1) it is undisputed that no counteraffidavit was submitted, and (2) its contents go directly to the question of whether the relator's knowledge was independent. The State argues that the relator cannot qualify as an original source because the relator was not an insider with potential access to information not available to the general public prior to the news articles. The State also argues that, although the relator could have gathered direct knowledge that Target and Wal-Mart were not paying taxes by making purchases online, the relator's knowledge was not independent from the information that was publicly available before the relator filed its action.

The rewards of a *qui tam* action are limited by the original source doctrine to relators who are true whistleblowers with direct knowledge that is independent of the public disclosure and who volunteer such direct and independent knowledge to the government before filing suit. *United States ex rel. Hayes v. Hoffman*, 325 F.3d 982, 990 (8th Cir. 2003). " 'A whistleblower sounds the alarm; he does not echo it.' " *Hayes*, 325 F.3d at 990, quoting *Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1475 (9th Cir. 1996). Accordingly, a relator

" 'must show that he had firsthand knowledge of the alleged fraud, and that he obtained this knowledge through his "own labor unmediated by anything else." ' " *United States v. Alcan Electrical & Engineering, Inc.*, 197 F.3d 1014, 1020 (9th Cir. 1999), quoting *United States ex rel. Aflatooni v. Kitsap Physicians Services*, 163 F.3d 516, 525 (9th Cir. 1999), quoting *United States ex rel. Devlin v. State of California*, 84 F.3d 358, 361 (9th Cir. 1996).

While striking a balance between the competing interests of encouraging whistleblowers and preventing parasitic lawsuits can be difficult, the federal courts do not exclude the possibility that a plaintiff can become an original source through his or her own investigative efforts. *United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1017 (1999), citing *Stinson*, 944 F.2d at 1161. In *Lamers*, Allen Lamers of Lamers Bus Lines, Inc., brought a *qui tam* action on behalf of the United States alleging that "the City of Green Bay lied to the Federal Transit Administration (FTA) about its efforts to transport local school children on public buses." *Lamers*, 168 F.3d at 1014. Lamers walked the streets of Green Bay and observed, firsthand, the operation and manner in which the city-owned competitor was operating its busses. By making his firsthand observations, Lamers acquired direct knowledge of Green Bay's bus system. The *Lamers* court determined that Lamers had direct knowledge and turned to the issues of whether that direct knowledge was independent because Lamers did not have inside information. The *Lamers* court found that "Lamers simply walked the streets of Green Bay observing the buses in action. The information he gleaned from this exercise was readily available to government investigators *** or even to members of the general public with an unusually keen interest in public transit procedures." *Lamers*, 168 F.3d at 1017. Although the *Lamers* court considered the possibility that Lamers was a busybody who should be turned away at the courthouse steps, it declined to characterize him as a parasite and, therefore, found him to be an original source. We find, therefore, that if we follow *Lamers* in *qui tam* plaintiffs' cases, we must conduct a case-by-case analysis of the relevant facts in each case to determine whether that plaintiff is a true whistleblower or merely a busybody to be turned away. *Lamers*, 168 F.3d at 1017-18.

In this case, the allegations in the relator's complaints were based upon a combination of direct action (*i.e.*, making purchases from Target and Wal-Mart through their respective online commerce mechanisms) and information gleaned from investigation on the Internet. Like Lamers, the relator obtained information by conducting an independent investigation. Unlike Lamers, the information the relator discovered during its investigation reached the State after the informa-

tion was made public by another source. While Lamers was the only person who conducted his investigation, the relator used more than one investigator. Finally, while Lamers had personal knowledge of how he acquired his information and the source of his information, the relator has personal knowledge of the information its investigators provided but fails to disclose the source of their information.

As the trial court correctly found, the August 21, 2000, BNA article preceded the relator's December 28, 2001, complaint against Target and its April 26, 2002, complaint against Wal-Mart, as did many of the articles presented by the State, Target and Wal-Mart.[6] The trial court also found that the question of cybershopping and sales tax was debated in congressional hearings before the United States Senate Committee on Finance months prior to the relator filing its initial lawsuit in December 2001. 107th U.S. Gen. Assem., Senate Proceedings, August 1, 2001. The trial court also considered the relator's affidavit in which the affiant claimed he never read the articles. The trial court acknowledged the relator's direct knowledge, but rejected its claim because "although [the relator] presents evidence of [its] investigative efforts, this information merely repeats the information available in the news media and congressional hearings." Additionally, some of the information in Diamond's affidavit describing the activities of other investigators who participated in the investigation, how the other investigators did their research and what the investigators saw or read would be hearsay and inadmissible under Supreme Court Rule 191. 210 Ill. 2d R. 191; see also *Radtke v. Murphy*, 312 Ill. App. 3d 657, 664 (2000). Accordingly, without affidavits from the other investigators who participated in the investigations explaining how they obtained the information that provided the factual basis for some of the allegations in the relator's complaint, Diamond's affidavit fails to comply with Supreme Court Rule 191 because some of the averments in the affidavit are not based on Diamond's personal knowledge. 210 Ill. 2d R. 191.

Trial courts may consider pleadings, depositions, and affidavits in

---

[6]See P. Thibodeau, *Internet Tax Group Rejects Compromise*, InfoWorld Daily News (March 21, 2000); L. Trager, *Not So Many Happy Returns*, Interactive Week from ZDWire (March 20, 2000); M. Seminerio, *Wal-Mart Joins the E-Spinoff Crowd, Eliminates Sales Tax for Online Consumers*, PC Week, at 59 (January 24, 2000); D. Lazarus, *Wal-Mart Poised to Swoop/Net Firms Fret as Huge Retailer Hatches Plan for Online Spin-off*, San Francisco Chronicle, January 15, 2000, at E1.

ruling on section 2—619 motions to dismiss. *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 262 (2004), citing *Zedella v. Gibson*, 165 Ill. 2d 181, 185 (1995). "When supporting affidavits have not been challenged or contradicted by counteraffidavits or *other appropriate means*, the facts stated therein are deemed admitted." (Emphasis added.) *Raintree Homes*, 209 Ill. 2d at 262, citing *Zedella*, 165 Ill. 2d at 185.

■ Stephen Diamond averred in his affidavit that he "neither read nor saw any of the three articles attached (BNA, Washington Post, Las Vegas Review[-]Journal), to the State's motion to dismiss." In the affidavit, Diamond also averred that he investigated certain of the claims he complains about in this complaint, while merely directing the investigations of other claims. Diamond's affidavit does not aver that he was unaware of the information in those articles, merely that he never personally saw or read the articles until April 2003, when Target submitted them in its "Appendix to Defendant's Motion to Dismiss." The trial court considered all the evidence, including Diamond's affidavit, yet still found the relator's evidence wanting. While Diamond's affidavit establishes that he had direct knowledge of some of the information for claims in the complaint, it does not establish that Diamond's other investigators had direct knowledge of the information they provided in the complaint or that the other investigators' knowledge was independent of the public disclosures provided in the newspapers and periodicals cited by the State, Wal-Mart and Target. In our opinion, it is significant that the public disclosures in newspaper articles and in periodicals, including the BNA article, predated the relator's complaints against Target and Wal-Mart.

Despite the lack of a counteraffidavit, the trial court found that there was sufficient evidence presented to convince the trial court that "the weight of the evidence indicates that it is more probably true than not true that Diamond is *not* an original source of the information in the public disclosures." We accept the general rule that "[w]hen facts alleged in an affidavit are not contradicted by a counteraffidavit, those facts are taken as true." *Hall v. DeFalco*, 178 Ill. App. 3d 408, 412 (1988). However, the law does not require a trial court to believe the uncontradicted, but implausible, testimony of an interested witness. *Best v. Best*, 358 Ill. App. 3d 1046, 1055 (2005), citing *Tepper v. Campo*, 398 Ill. 496, 504-06 (1947). Diamond, the affiant in the affidavit, led the relator's legal team. Although Diamond may not have personally seen the articles or read them, Diamond's affidavit fails to provide the source of the information provided by the other investigators. Therefore, the trial court was within its authority to reject relator's claim that he and his investigators were unaware of those

articles and periodicals that reflect pervasive coverage in the news media. It does not follow that, because the affidavit was not mentioned in the memorandum order, it was not considered. All parties arguing the motion before the trial court made reference to the affidavit. The relator made the affidavit and its contents a central point in its argument before the trial court at the hearing on the motion to dismiss. Therefore, we are unwilling to find that, because the affidavit was not specifically mentioned in the trial court's memorandum order, the contents of the affidavit were not considered.

## CONCLUSION

We find that the trial court was correct in its finding that the relator was not the original source of the information found in the two complaints because the allegations in the relator's complaints were supported by or substantially similar to the information in the public disclosures that were readily available in the news media or in transcripts from congressional hearings. Accordingly, we hold that the trial court did not err when it dismissed the relator as a party in both lawsuits.

For the foregoing reasons, the trial court's order dismissing the relator as a party in both lawsuits is affirmed.

Affirmed.

GALLAGHER, P.J., and O'MARA FROSSARD, J., concur.