# Illinois Official Reports

## Appellate Court

---

### *Advanced Physicians, S.C. v. Provena Glenwood Medical Imaging*,
### 2018 IL App (3d) 170296

---

| | |
|---|---|
| Appellate Court Caption | ADVANCED PHYSICIANS, S.C., Plaintiff-Appellee, v. PROVENA GLENWOOD MEDICAL IMAGING, and FUTURE DIAGNOSTICS GROUP, LLC, Defendants-Appellants. |
| District & No. | Third District<br>Docket No. 3-17-0296 |
| Filed | July 5, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Will County, Nos. 09-CH-5679, 10-CH-2054, 10-CH-3108; the Hon. Raymond E. Rossi, Judge, presiding. |
| Judgment | Certified questions answered. |
| Counsel on Appeal | David J. Tecson and Daniel J. Fumagalli, of Chuhak & Tecson, P.C., of Chicago, for appellant Provena Glenwood Medical Imaging.<br><br>Epaminondas Eddie Manelis, of Chicago, for appellant Future Diagnostics Group (FDG), LLC.<br><br>Hall Adams III, of Law Offices of Hall Adams, LLC, of Chicago, and Jeffery J. Tomczak, of Tomczak Law Group, of Joliet, for appellee. |

Panel          JUSTICE McDADE delivered the judgment of the court, with opinion.
Justice Schmidt concurred in the judgment and opinion.
Justice Wright dissented, with opinion.

**OPINION**

¶ 1      The plaintiff, Advanced Physicians, S.C. (Advanced Physicians), sought to maintain a *qui tam* action against the defendants, Provena Glenwood Medical Imaging (Provena) and Future Diagnostics Group, LLC (FDG). After extensive motion practice, the circuit court denied the defendants' motions, culminating in an interlocutory appeal under Illinois Supreme Court Rule 308 (eff. Jan. 1, 2015). Four certified questions are presented in this appeal, including a question regarding whether the circuit court had subject matter jurisdiction and a question regarding whether Advanced Physicians constitutes an "interested" person for purposes of being able to maintain the *qui tam* action. We answer the first and second questions in the negative.

¶ 2                                    FACTS

¶ 3      On February 7, 2006, John Donaldson filed a *qui tam* action under seal in the Cook County circuit court, alleging that certain magnetic resonance imaging (MRI) facilities engaged in a fraudulent kickback scheme regarding MRI services. The complaint alleged that the MRI facilities entered into lease agreements with physicians who would refer their patients to the MRI facilities for MRI services but then, despite not providing any services for their patients, the physicians would bill the insurance companies at excessive rates for the MRI services and then split the proceeds with the MRI facilities. Count I of the complaint alleged a violation of the Insurance Claims Fraud Prevention Act (Act) (740 ILCS 92/1 *et seq.* (West 2006)). Count II alleged violations of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2006)).

¶ 4      On January 17, 2007, the Cook County circuit court unsealed the contents of the court file in Donaldson's *qui tam* action. Also on that date, the Attorney General's office issued a press release stating that it had decided to join the case. News of the lawsuit received media coverage in the Chicago area. Two years later, on January 14, 2009, the Attorney General announced that it had settled the case for $1.2 million. *Attorney General Madigan Settles MRI Kickback Case for $1.2 Million*, Ill. Att'y Gen. (Jan. 14, 2009), http://www.illinoisattorneygeneral.gov/pressroom/2009_01/20090114.html.

¶ 5      On May 22, 2007, chiropractors and siblings Dana and Richard Vallandigham filed a civil complaint in the Cook County circuit court against numerous MRI facilities, including defendants Provena and FDG, based on the alleged kickback scheme and claiming that the MRI-service business that they wholly owned, Advanced Physicians, S.C., was harmed by the scheme. Count I alleged violations of the Illinois Antitrust Act (740 ILCS 10/1 *et seq.* (West 2006)). Count II alleged civil conspiracy. Count III alleged violations of the Consumer Fraud and Deceptive Business Practices Act. Count IV was a *qui tam* claim alleging violations of the Act. All of these counts were based on allegations that the MRI facilities conspired to

monopolize the MRI-service market in the Chicago area. In part, the complaint alleged that when the Vallandighams began marketing their MRI services to local physicians in 2005, some of these physicians stated that they had contractual relationships with the MRI providers and would not send their MRI business to the open market. The Vallandighams also alleged that they were told details about these "sham" lease agreements, in which "the referring physicians and clinics *** would pay or reimburse a flat fee of around $450.00 for an MRI scan while the referring physicians and clinics were billing the patient or their third party payor for these services at a much higher rate." This was allegedly done to "make it appear that the Referrers were leasing space at the Defendant MRI Facilities when, in fact, the physicians did not attend to their patients' MRI scans or perform any services at the MRI facilities."

¶ 6    On October 17, 2008, the Attorney General, who had decided to intervene in the *qui tam* claim, filed a motion to dismiss the Vallandighams as interested persons with prejudice and to voluntarily dismiss count IV of the 2007 Vallandigham complaint. The motion stated that the Vallandighams were not contesting their dismissal from count IV of the complaint, but that they intended to proceed with the first three counts. Further, the motion alleged:

> "8. The State was independently investigating this matter before the Vallandighams filed their complaint, and will continue to investigate as the State deems appropriate.
>
> 9. In addition, the State's broad, state-wide investigation of schemes complained of by the Vallandighams was previously disclosed through prior litigation, news media, and an Attorney General press release.
>
> 10. The Vallandighams do not qualify as original sources because they have not provided any direct and independent knowledge of the information on which the allegations are based. The Vallandighams have not demonstrated that they had firsthand knowledge of the alleged fraud and that they obtained this knowledge through their own labor unmediated by anything else."

¶ 7    On October 27, 2008, the Cook County circuit court entered an order granting the Attorney General's motion to dismiss. The court specifically found that (1) "[t]he allegations in this complaint were previously publicly disclosed through previously filed litigation, media reports, and an Attorney General press release" and (2) "[t]he Vallandighams are not original sources of the information on which this action is based, within the meaning of Section 30(b) of [the Act (740 ILCS 92/30(b) (West 2006))]." The court's order (1) dismissed the Vallandighams as interested persons with prejudice, (2) granted the voluntary dismissal of count IV of the 2007 complaint without prejudice and allowed the State to refile as it saw fit, and (3) permitted the 2007 Vallandigham complaint to proceed on counts I-III because the State was not a party to those counts.

¶ 8    On July 17, 2009, the Vallandighams filed another complaint in the Cook County circuit court against Provena that contained essentially the same allegations as counts I-III of the 2007 complaint, *i.e.*, violations of the Antitrust Act, civil conspiracy, and violations of the Consumer Fraud and Deceptive Business Practices Act and the Medical Practice Act of 1987 (225 ILCS 60/1 (West 2006)). The parties agreed to transfer the case to Will County.

¶ 9    On March 22, 2010, the Vallandighams filed their first amended complaint, which included counts I-III from the 2009 complaint, but also reintroduced the same *qui tam* claim that was included in the 2007 complaint—*i.e.*, count IV, from which the Vallandighams had

been dismissed with prejudice and that had been voluntarily dismissed by the Attorney General.

¶ 10    Provena filed a motion to dismiss the 2010 first amended complaint. Regarding counts I-III, the circuit court granted the motion to dismiss without prejudice. The court denied the motion regarding count IV.

¶ 11    On July 15, 2010, a second amended complaint was filed with the Will County circuit court. However, the complaint was filed by Advanced Physicians—the business wholly owned by the Vallandighams—rather than by the Vallandighams themselves. The second amended complaint included the same four counts that appeared in the 2010 first amended complaint.

¶ 12    Provena filed a motion to dismiss the 2010 second amended complaint. The circuit court consolidated the case (Will County circuit court case number 09-CH-5679) with another action the Vallandighams had filed against defendant FDG (Will County circuit court case number 10-CH-2054). The court then denied Provena's motion to dismiss and a motion to dismiss that had been filed by FDG.

¶ 13    Subsequently, Advanced Physicians filed a third amended complaint on May 5, 2011, which added over 80 physicians and physician groups as defendants. Later, Advanced Physicians voluntarily dismissed counts I-III of its third amended complaint, but it proceeded on count IV.

¶ 14    There is nothing in the record to indicate that the Vallandighams complied with the various requirements of the Act at the time that they realleged count IV.[1] The only indication that the Attorney General was ever contacted about the claim is that Advanced Physicians asserts that it "provided a comprehensive report on the status" of its claim to the Attorney General on August 11, 2014—five years after the complaint in which it was substituted as plaintiff was filed. This "comprehensive report" consisted of a letter from counsel for Advanced Physicians to the Attorney General's office. The purpose of the lengthy letter can be seen in its second paragraph:

> "The fundamental issue before the Court is whether Advanced Physicians can proceed with its [Insurance Claims Fraud Prevention Act] claim in Will County when, upon motion of the Illinois Attorney General's office, a similar claim was dismissed in Cook County in 2009. For the reasons set forth below, we believe it can, particularly if the Illinois Attorney General agrees that Advanced Physicians is the 'original source' of the alleged scheme as to these specific defendants—a position that, admittedly, would be contrary to that taken by the Attorney General in 2009, but which we believe is fully supported by the facts."

¶ 15    Motions to dismiss and for summary judgment were filed regarding the third amended complaint. In part, Provena had argued that the Attorney General's dismissal of the Vallandigham *qui tam* action deprived the court of subject matter jurisdiction over the Advanced Physicians action—because Advanced Physicians was wholly owned and operated by the Vallandighams, it was likewise not an original source of the information provided to the Attorney General. Those motions were denied.

---

[1]See, *e.g.*, 740 ILCS 92/15(b) (West 2010) (requiring, in part, that "[a] copy of the complaint and a written disclosure of substantially all material evidence and information the person possesses shall be served on the State's Attorney and Attorney General").

¶ 16　　　In April 2017, the circuit court allowed Provena's motion to file an interlocutory appeal and certified the following four questions:

> (1) "The legal issue of whether the Illinois Attorney General's Motion to Dismiss the Vallandighams as interested persons with prejudice dated October 17, 2008, combined with the Order which granted the Motion, deprived all subsequent courts of subject matter jurisdiction pursuant to [the Act]."
>
> (2) "The legal issue of whether Advanced Physicians, S.C. satisfies the definition of an interested person as defined by Section 15 of the [Act] given that Richard and Dana Vallandigham were the *qui tam* plaintiffs who filed the action and served a copy of the complaint on the State's Attorney and Attorney General."
>
> (3) "The legal issue of whether a discount provided by PGMI pursuant to an MRI lease with a physician constitutes 'remuneration' as defined by Section 5 of the [Act]."
>
> (4) "The legal issue of whether the plaintiff must establish fair market value for the medical service in question in the event Illinois courts find that a discount may satisfy the definition of 'remuneration' as defined by the [Act]."

We also note that the only defendants that appealed were Provena and FDG.

¶ 17　　　　　　　　　　　　　　　　　ANALYSIS

¶ 18　　　The first question certified for this appeal is "[t]he legal issue of whether the Illinois Attorney General's Motion to Dismiss the Vallandighams as interested persons with prejudice dated October 17, 2008, combined with the Order which granted the Motion, deprived all subsequent courts of subject matter jurisdiction pursuant to [the Act]."

¶ 19　　　Subject matter jurisdiction "refers to the power of a court to hear and determine cases of the general class to which the proceeding in question belongs." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002). "With the exception of the circuit court's power to review administrative action, which is conferred by statute, a circuit court's subject matter jurisdiction is conferred entirely by our state constitution." *Id.*

¶ 20　　　A circuit court's subject matter jurisdiction extends to all "justiciable matters." Ill. Const. 1970, art. VI, § 9. "Thus, in order to invoke the subject matter jurisdiction of the circuit court, a plaintiff's case, as framed by the complaint or petition, must present a justiciable matter." *Belleville Toyota*, 199 Ill. 2d at 334.

¶ 21　　　"Generally, a 'justiciable matter' is a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." *Id.* at 335. Notably, the legislature can create a justiciable matter "by enacting legislation that creates rights and duties that have no counterpart at common law or in equity." *Id.* It is important to note, however, that when the legislature creates a new justiciable matter, the legislature does not confer subject matter jurisdiction on the circuit court. *Id.* Thus, what may appear in the enacted legislation to be conditions precedent to the circuit court's exercise of subject matter jurisdiction are in fact *not* jurisdictional prerequisites. See *In re M.W.*, 232 Ill. 2d 408, 425-26 (2009); see also *Belleville Toyota*, 199 Ill. 2d at 340. For example, a four-year statute of limitations for bringing certain actions under the Motor Vehicle Franchise Act (815 ILCS 710/1 *et seq.* (West 2000)) did not constitute a jurisdictional prerequisite; rather, it provided "an affirmative defense that the

defendant might plead as a bar to liability." *M.W.*, 232 Ill. 2d at 425 (citing *Belleville Toyota*, 199 Ill. 2d at 344-45).

¶ 22    The Act is a whistleblower law that provides "interested" persons, including insurers, with the ability to bring civil actions on behalf of the State for insurance fraud, including kickback schemes. See 740 ILCS 92/5(a), 15(a) (West 2006). Actions brought by an "interested" person under the Act are *qui tam* actions.[2] See Black's Law Dictionary 1251 (6th ed. 1990) (defining a *qui tam* action as "an action brought by an informer, under a statute which establishes a penalty for the commission or omission of a certain act, and provides that the same shall be recoverable in a civil action, part of the penalty to go to any person who will bring such action and the remainder to the state or some other institution"). The State is the real party in interest in *qui tam* actions. See 740 ILCS 92/20 (West 2014); *Scachitti v. UBS Financial Services*, 215 Ill. 2d 484, 515 (2005); *State ex rel. Saporta v. Mortgage Electronic Registration Systems, Inc.*, 2016 IL App (3d) 150336, ¶ 18. "*[Q]ui tam* plaintiffs, acting as statutorily designated agents for the state, may proceed only with the consent of the Attorney General, and remain completely subordinate to the Attorney General at all times." *Scachitti*, 215 Ill. 2d at 515; see also 740 ILCS 92/15 (West 2014).

¶ 23    The limitations written into section 15 of the Act, such as the "interested" persons requirement, are not jurisdictional prerequisites and therefore do not impact the circuit court's subject matter jurisdiction. See *Belleville Toyota*, 199 Ill. 2d at 340; *M.W.*, 232 Ill. 2d at 425. Thus, the circuit court in this case has subject matter jurisdiction to hear *qui tam* claims brought under the Act such as count IV of Advanced Physicians' amended complaint. The 2008 Cook County circuit court finding that the Vallandighams were not "interested" persons under the Act in no way impacts the Will County circuit court's subject matter jurisdiction in this case. Accordingly, we answer the first certified question in the negative.

¶ 24    The second question certified for this appeal is "[t]he legal issue of whether Advanced Physicians, S.C. satisfies the definition of an interested person as defined by Section 15 of the [Act] given that Richard and Dana Vallandigham were the *qui tam* plaintiffs who filed the action and served a copy of the complaint on the State's Attorney and Attorney General."

¶ 25    In essence, this is a question of *res judicata*, which means that "a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action." *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334 (1996). The *res judicata* bar "extends not only to what was actually decided in the original action, but also to matters which could have been decided in that suit." *Id.* at 334-35.

¶ 26    The three elements of *res judicata* are "(1) a final judgment on the merits has been rendered by a court of competent jurisdiction; (2) an identity of cause of action exists; and (3) the parties or their privies are identical in both actions." *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008).

¶ 27    There is no question that the first two elements of *res judicata* have been met. An order allowing a voluntary dismissal constitutes a final judgment. See *Kahle v. John Deere Co.*, 104 Ill. 2d 302, 305-07 (1984). In addition, the dismissal with prejudice of a party from a claim is a final and appealable order if it either also disposes of all remaining claims and parties or

---

[2]For a history of the development of *qui tam* actions, see *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 774-78 (2000).

- 6 -

includes an appropriate finding by the circuit court under Illinois Supreme Court Rule 304(a) (eff. Jan. 1, 2006). *State ex rel. Beeler, Schad & Diamond, P.C. v. Target Corp.*, 367 Ill. App. 3d 860, 864 (2006). Furthermore, it is undisputed that the claim brought in count IV by Advanced Physicians is the same claim brought by the Vallandighams in 2007.

¶ 28 Thus, the remaining question is whether the parties or their privies are identical. Regarding the defendants, the only two that appealed were Provena and FDG.[3] Both of these defendants were named in the Vallandighams' 2007 complaint. Therefore, the only question is whether the plaintiffs are the same.

¶ 29 For *res judicata* purposes, courts have routinely found privity between officers of corporations and the corporations themselves. See, *e.g.*, *National Union Fire Insurance Co. of Pittsburgh, PA v. DiMucci*, 2015 IL App (1st) 122725, ¶ 32; *Marine Midland Bank v. Slyman*, 995 F.2d 362, 365 (2d Cir. 1993). We see no reason to reach a different conclusion in the present case. Even though the Attorney General did not allege in its motion to dismiss the Vallandighams from the 2007 case that they were not "interested" persons, the Cook County circuit court nevertheless found that they in fact were not "interested" persons for purposes of the Act and dismissed them with prejudice. The Vallandighams did not challenge that finding. Subsequently, although the record is not entirely clear on how or why it came about, the Vallandighams decided to reraise the claim pursuant to the Act against Provena and FDG in Will County, despite the fact that this was the exact claim they brought in Cook County in 2007—which the Attorney General voluntarily dismissed after the Vallandighams were dismissed with prejudice as parties. Then, and again the record is not entirely clear on how it happened, the Vallandighams suddenly disappeared as the named plaintiffs and were substituted by their wholly owned corporation, Advanced Physicians. For *res judicata* purposes, there is no difference between the Vallandighams and Advanced Physicians. We further note that arriving at this conclusion does not require a factual finding regarding the corporate structure of Advanced Physicians, as the dissent alleges. There is no dispute that the Vallandighams wholly own Advanced Physicians; they pled as much throughout the proceedings below.

¶ 30 Because the Vallandighams were found not to constitute "interested" persons under the Act, the same conclusion must be drawn regarding Advanced Physicians in this case. Accordingly, we answer the second certified question in the negative.

¶ 31 Our rulings on the first two certified questions obviate the need to address and answer the third and fourth certified questions.

¶ 32                                                CONCLUSION

¶ 33 We answer the first and second questions certified by the circuit court of Will County in the negative; our answer to the second question obviates the need to address the remaining two certified questions.

¶ 34 Certified questions answered.

---

[3]There is no indication from the record what occurred regarding the additional defendants named in Advanced Physicians' third amended complaint.

¶ 35    JUSTICE WRIGHT, dissenting:

¶ 36    In *Rozsavolgyi v. City of Aurora*, 2017 IL 121048, our supreme court provides very instructive guidance concerning interlocutory appeals. I note that *Rozsavolgyi* was issued by our supreme court after we allowed the interlocutory appeal in this case.

¶ 37    However, in this recent decision, our supreme court carefully reminds litigants and reviewing courts that Rule 308 interlocutory appeals are not favored. *Rozsavolgyi*, 2017 IL 121048, ¶ 22. I believe this language is worth repeating. Rule 308 appeals are not favored. I welcome this clarification from our supreme court that permits our court to reexamine a decision to allow an interlocutory appeal. Upon reconsideration in this case, I would vacate our order allowing the interlocutory appeal on two grounds. First, I conclude that the trial court's decision was correct. Second, after digesting *Rozsavolgyi*, I would exercise the option to reconsider my decision to allow the Rule 308 petition.

¶ 38    My separate offering is not intended to be critical of this panel's decision to allow the Rule 308 petition on August 4, 2017. I also recognize that my respected colleagues do not share my view that our decision to allow the Rule 308 petition should be reconsidered in the first place.

¶ 39    Upon reconsideration, I would vacate our order allowing leave to appeal on the first certified question for the reasons set forth below. A permissive interlocutory appeal under Rule 308 should not take place unless it involves a question of law. However, not all questions of law meet the requirements necessary for a Rule 308 appeal. This question of law must involve an issue where there is a substantial ground for a difference of opinion *and* an immediate ruling will materially advance the ultimate termination of the litigation. See Ill. S. Ct. R. 308 (eff. Jan. 1, 2015). Each certified question now before this court has been labeled as a request for guidance on a "legal issue." Nonetheless, calling the issue in each question a "legal issue" does not make it so.

¶ 40    Now, in hindsight, I do not believe the first certified question meets the Rule 308 requirement that there was a substantial difference of opinion on the scope of the trial court's statutory subject matter jurisdiction. There is little debate that the trial court had subject matter jurisdiction in this matter. As the majority notes above, "The limitations written into section 15 of the Act, such as the 'interested' persons requirement, are not jurisdictional prerequisites and therefore do not impact the circuit court's subject matter jurisdiction. See *Belleville Toyota*, 199 Ill. 2d at 340; *M.W.*, 232 Ill. 2d at 425." *Supra* ¶ 23. If the first certified question may be answered by the majority with a reference to existing and longstanding appellate case law, I respectfully observe that the first certified question does not involve an issue for which there are substantial grounds for a difference of opinion. See *Rozsavolgyi*, 2017 IL 121048, ¶ 32.

¶ 41    The second certified question involves questions of fact regarding whether this corporation and the officers of this corporation are the same person. Privity cannot be determined without considering the facts pertaining to the structure of Advanced Physicians when the entity was granted corporate status. If the answer to the second certified question depends on the underlying facts, the second certified question is improper for consideration under Rule 308. *Rozsavolgyi*, 2017 IL 121048, ¶ 21 (citing *In re Estate of Luccio*, 2012 IL App (1st) 121153, ¶ 32).

¶ 42    Similarly, the third certified question requires our court to determine whether Provena's discount constitutes remuneration as defined by section 5 of the Act. The answer to the third certified question cannot be reached without reviewing the MRI lease to determine the structure of the discount. Again, our supreme court has instructed our court to act as a

"gatekeeper" by closely guarding against improper interlocutory appeals. *Rozsavolgyi*, 2017 IL 121048, ¶ 23.

¶ 43 Finally, the fourth certified question seeks guidance on the burden of proof to establish fair market value. The language of the fourth question indicates the answer to this certified question is necessary "*in the event* Illinois courts find that a discount may satisfy the definition of 'remuneration' as defined by the [Act]." (Emphasis added.) Consequently, I conclude that we would not materially advance the ultimate termination of the litigation because the question involves a contingency that may not take place.

¶ 44 Based on guidance from the decision in *Rozsavolgyi*, I would vacate our order granting leave to appeal on all four certified questions and remand the matter to the trial court. As stated above, I would affirm the trial court's decision.