# Illinois Official Reports

## Appellate Court

***Lyons Township ex rel. Kielczynski v. Village of Indian Head Park*,
2017 IL App (1st) 161574**

| | |
|---|---|
| Appellate Court Caption | LYONS TOWNSHIP *ex rel.* JOHN H. KIELCZYNSKI, Plaintiff-Appellant, v. THE VILLAGE OF INDIAN HEAD PARK, Defendant- Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-16-1574 |
| Filed<br>Rehearing denied<br>Modified upon denial<br>of rehearing | March 24, 2017<br>June 20, 2017<br><br>June 23, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-L-1442; the Hon. Brigid Mary McGrath, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Loevy & Loevy, of Chicago (Matthew Topic, of counsel), for appellant.<br><br>Querrey & Harrow, Ltd., of Chicago (Paul A. Rettberg and Jason Callicoat, of counsel), for appellee. |

Panel                            JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justice Hall concurred in the judgment and opinion.
Presiding Justice Gordon specially concurred, with opinion.

## OPINION

¶ 1    Relator, John Kielczynski, appeals the dismissal of his two-count complaint against defendant, Village of Indian Head Park (Village), under the Illinois False Claims Act (Act) (740 ILCS 175/1 *et seq.* (West 2014)), pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2014)). Relator alleged the Village overbilled for policing services (count I) and failed to remit collections from traffic fines (count II) in violation of its contract with plaintiff, Lyons Township. On appeal, relator contends the circuit court erred in finding that his claims were barred by the Act's public disclosure provision and that the Village was immune from liability based on section 2-106 of the Illinois Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2-106 (West 2014)). Based on the following, we reverse and remand for further proceedings.

¶ 2                                    FACTS

¶ 3    During the relevant time period, relator was a retired Lyons Township police officer. From June 2014 to October 2014, relator submitted a number of Freedom of Information Act (FOIA) requests. In response, relator received a 2014-16 contract for police services between the Village and Lyons Township, as well as copies of traffic tickets written by the Village while in Lyons Township. The contract expressly stated that its purpose was "to provide mobile, well-equipped and trained police officers from [the Village] police department to patrol and provide [p]olice [p]rotection in unincorporated areas within [Lyons Township] on a contract basis." Pursuant to the terms of the contract, the Village was to provide a minimum of 3120 "man hours per year" in police services for which Lyons Township would compensate a specified dollar amount. Then, on February 11, 2015, relator filed a lawsuit, asserting that the Village had billed Lyons Township for police services not actually provided and that the Village retained revenue from tickets written within Lyons Township in violation of the contract.

¶ 4    The Village responded by filing a section 2-619 motion to dismiss the suit. The circuit court granted the motion with prejudice, finding relator's claims were barred by the public disclosure provision of the Act because relator's investigation was based on records obtained under FOIA. In addition, the circuit court found the Village was immune from any liability pursuant to section 2-106 of the Tort Immunity Act.

¶ 5    This appeal followed.

¶ 6                                                  ANALYSIS

¶ 7        Relator contends the circuit court erred in dismissing his claims where the public disclosure provision of the Act and section 2-106 of the Tort Immunity Act do not apply to his suit.

¶ 8        A motion to dismiss pursuant to section 2-619 admits the legal sufficiency of the complaint, but asserts an affirmative matter to otherwise defeat the claim. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. In considering a section 2-619 motion to dismiss, a court reviews all pleadings and supporting documents in a light most favorable to the nonmoving party. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367-68 (2003). In so doing, the court must determine whether the existence of a genuine issue of material fact precludes dismissal or, absent such an issue of fact, whether the asserted affirmative matter makes dismissal proper as a matter of law. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993). We review the dismissal of a complaint pursuant to section 2-619 *de novo*. *Id.* at 116.


¶ 9                                               I. False Claims Act

¶ 10       The Illinois False Claims Act is an anti-fraud statute modeled after the federal False Claims Act (31 U.S.C. §§ 3729-3733 (2006)). *State ex rel. Schad, Diamond & Shedden, P.C. v. National Business Furniture, LLC*, 2016 IL App (1st) 150526, ¶ 28. Pursuant to the Act, a party that perpetrates fraud against the State is liable for civil penalties and triple damages. 740 ILCS 175/3(a)(1) (West 2014). A claim under the Act may be raised on the State's behalf by the Attorney General or by a private person, known as a "relator," in a *qui tam* action. 740 ILCS 175/4(a)-(c) (West 2014). With regard to a *qui tam* action, the State may choose to intervene or, as in this case, may allow the relator to proceed with the litigation. 740 ILCS 175/4(b)(4) (West 2014). In the latter, the relator is considered a party to the action and is entitled to a percentage of the proceeds or settlement if the lawsuit is successful. 740 ILCS 175/4(c)(1), (d) (West 2014).

¶ 11       The following provisions of the Act are relevant to our analysis and are considered the public disclosure bar to *qui tam* actions:

> "(4)(A) The court shall dismiss an action or claim under this Section, unless opposed by the State, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed:
>
>             ***
>
>        (ii) in a State legislative, State Auditor General, or other State report, hearing, audit, or investigation; or ***
>
>             ***
>
> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
>
>        (B) For purposes of this paragraph (4), 'original source' means an individual who either (i) prior to a public disclosure under subparagraph (A) of this paragraph (4), has voluntarily disclosed to the State the information on which allegations or transactions in a claim are based, or (ii) has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has

voluntarily provided the information to the State before filing an action under this Section." 740 ILCS 175/4(e)(4) (West 2014).

The Act defines "State" as:

> "(a) 'State' means the State of Illinois; any agency of State government; the system of State colleges and universities, any school district, community college district, county, municipality, municipal corporation, unit of local government, and any combination of the above under an intergovernmental agreement that includes provisions for a governing body of the agency created by the agreement." 740 ILCS 175/2 (West 2014).

Accordingly, there are four inquiries that must be conducted by a court to determine whether it has jurisdiction to hear a *qui tam* suit. *State ex rel. Beeler, Schad & Diamond, P.C. v. Target Corp.*, 367 Ill. App. 3d 860, 868 (2006); see also *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009). The questions are (1) whether the alleged "public disclosure" contains allegations or transactions from one of the listed sources of section 4(e)(4)(A) of the Act (740 ILCS 175/4(e)(4)(A) (West 2014)), (2) whether the alleged disclosure was made "public" within the meaning of the Act, (3) whether the relator's complaint is "based upon" the "public disclosure," and (4) if the answer is positive for the prior three inquiries, whether the relator qualifies as an "original source" under section 4(e)(4)(B) of the Act. *Id.*; 720 ILCS 175/4(e)(4)(B) (West 2014)

¶ 12    Turning to the case before us, the first question we must address is whether substantially the same allegations or transactions as alleged in relator's claims were publicly disclosed in "a State legislative, State Auditor General, or other State report, hearing, audit, or investigation." Relator contends the circuit court erroneously concluded, in reliance on the United States Supreme Court case *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401 (2011), that the FOIA information supporting his claims qualified as "State reports." More specifically, relator argues that, pursuant to the language of the Act, the "State" in this matter is Lyons Township, the government unit on whose behalf the lawsuit was raised, and not the Village. Therefore, relator maintains that the records supporting his claims that were produced by the Village pursuant to his FOIA requests do not qualify as "State reports" and, thus, do not bar his claims. The Village counters that the FOIA documents do qualify as "State reports" under *Schindler Elevator Corp.* and the Act, where "State" is defined broadly as any state or local government actor. Indian Head Park continues that, because relator's complaint was entirely based upon information provided in the FOIA documents, the complaint was properly dismissed pursuant to the public disclosure provision.

¶ 13    Our research has not revealed any Illinois case law on the question presented. That said, our analysis requires application of the well-known principles of statutory interpretation. The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature by applying the plain and ordinary meaning of the language of the statute. *Hamilton v. Industrial Comm'n*, 203 Ill. 2d 250, 255 (2003). When the statutory language is clear, courts must apply the statute as written. *Id.* at 256. However, if a statute is capable of being understood by reasonably well-informed persons in two or more different ways, the statute is considered ambiguous. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 440 (2010). The supreme court has advised:

> "If the statute is ambiguous, the court may consider extrinsic aids of construction in order to discern the legislative intent. [Citation.] We construe the statute to avoid

- 4 -

rendering any part of it meaningless or superfluous. [Citation.] We do not depart from the plain statutory language by reading into it exceptions, limitations, or conditions that conflict with the expressed intent. [Citation.]" *Id.* at 440-41.

¶ 14 We recognize that, as defined by the Act, "State" can mean a unit of local government. We, however, conclude that, in this context, "State" means the unit of government allegedly being defrauded, namely, Lyons Township. We find support for our interpretation in other subsections of the Act. For example, the "State" has the primary responsibility for conducting a *qui tam* action and maintains the authority to dismiss a case despite a relator's objections. 740 ILCS 175/4(c) (West 2014); see *People ex rel. Schad, Diamond & Shedden, P.C. v. QVC, Inc.*, 2015 IL 132999, ¶ 21. Accordingly, in this context, logic dictates that the defrauded government unit retains the decision-making power regarding the fate of a case. In contrast, it would be illogical to give an unaffected unit of government the authority to make determinations regarding the survival of a case for which that government unit has no connection. In fact, the Act provides that a *qui tam* action "shall be brought in the name of the State." 740 ILCS 175/4(b) (West 2014). Clearly, a *qui tam* action would not be brought *on behalf of* a government entity engaging in fraud, or any other random government unit with no ties to the claim. The purpose of the Act, in relevant part, is to provide *qui tam* actions for citizens to *reveal* fraud against the government, not to protect a government entity engaging in fraud. See *National Business Furniture, LLC*, 2016 IL App (1st) 150526, ¶ 28 (the Illinois False Claims Act is an anti-fraud statute).

¶ 15 We find further support for our interpretation of "State report" in the most recent amendments to section 4(e) of the Act. Prior to August 17, 2012, section 4(e) of the Act provided:

"(4)(A) No court shall have jurisdiction over an action under this Section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a legislative, administrative, or Auditor General's report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." Pub. Act 96-1304 (eff. July 27, 2010).

As of August 17, 2012, however, the legislature amended section 175/4(e) of the Act to separate the means of public disclosure and by removing administrative reports as a qualifying method of public disclosure—instead, expressly requiring that a non-Auditor General's report be a "State" report. See Pub. Act 97-978 (eff. Aug. 17, 2012).

¶ 16 The 2012 amendment brought the Act in compliance with the federal False Claims Act, which similarly had been amended to narrow the public disclosure methods to no longer include state and local reports, only federal reports. See 31 U.S.C. § 3730(e)(4)(A)(ii) (Supp. I 2012). The federal amendment was made in response to *Graham County Soil & Water Conservation District v. United States ex rel. Wilson*, 559 U.S. 280, 283 (2010), wherein the Supreme Court interpreted pre-amended language, nearly identical to that in the pre-amended version of the Illinois Act, of "administrative reports, audits, and investigations" as encompassing disclosures made in state and local sources as well as federal sources. As with the federal False Claims Act, the Illinois Act narrowed the acceptable methods for the public disclosure bar by limiting the prohibition, in relevant part, to a "State report." Logic dictates that, in narrowing the acceptable methods for application of the public disclosure bar, the legislature intended "State report" to be a report known to the unit of government being

defrauded and not merely a report provided by any unit of government. See *Bailey & Associates, Inc. v. Department of Employment Security*, 289 Ill. App. 3d 310, 321 (1997) ("[g]enerally, if the legislature passes an amendment contradicting a recent interpretation of a statute, it is 'an indication that such interpretation was incorrect and that the amendment was enacted to clarify the legislature's original intent' " (quoting *Collins v. Board of Firemen's Annuity & Benefit Fund*, 155 Ill. 2d 103, 111 (1993)).

¶ 17 We recognize that, in *Schindler Elevator Corp.*, the Supreme Court found that a written agency response to a FOIA request constituted a "report" under the federal False Claims Act's public disclosure bar. 563 U.S. at 410-11. In so doing, the Supreme Court defined "report" based on the word's ordinary meaning, namely, something that gives information or a notification, and based on the "generally broad scope of the FCA's public disclosure bar." *Id.* at 407-08. Relying on the "entire text" "integrated [as a] whole," the Supreme Court noted the wide reach of the public disclosure bar by considering sources of public disclosure, such as the "news media" and "administrative hearings," along with the legislature's use of the broad terms "allegations or transactions." *Id.*

¶ 18 We find, however, that *Schindler Elevator Corp.* has no application to the case at bar and, therefore, we need not determine whether a FOIA request constitutes a "report." Putting aside the parties' dispute regarding the precedential value of a federal case to the interpretation of our state statute, our statute was amended after the *Schindler Elevator Corp.* case. Importantly, *Schindler Elevator Corp.* expressly limited its analysis to the pre-amended version of the public disclosure bar. *Id.* at 404 n.1. Moreover, as previously discussed, section 4(e) of the Act, in relevant part, now limits the public disclosure bar to a "State report." Reading the statute as a whole, as we must, a "State report" under the circumstances of this case means a report provided by the government entity being defrauded, *i.e.*, Lyons Township. Our interpretation is consistent with the plain reading of the text and complies with the purpose of the public disclosure bar to strike a balance between encouraging private persons to root out fraud while stifling parasitic lawsuits. See *Graham County Soil & Water Conservation District*, 559 U.S. at 294-95. Accordingly, where the vast majority of FOIA documents upon which relator based his claims were provided by the Village, relator's allegations were not substantially the same allegations or transactions as alleged in a publicly disclosed "State report."[1] Relator's claims, therefore, were not barred by the public disclosure provision.

¶ 19 Furthermore, we find the Village's additional argument—that our interpretation of the Act cannot stand where information in the news media can act as a public disclosure bar, thus demonstrating that "State" need not mean the unit of government being defrauded—is misplaced. The 2012 amendments to the Act made clear that there are various methods for the public disclosure of information, one being a "State report" and another being "the news media." See Pub. Act 97-978 (eff. Aug. 17, 2012). There is no question that information within the news media can be considered publicly disclosed; however, there is no question

---

[1]We acknowledge that in *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 302-03 (3d Cir. 2016), the Third Circuit Court of Appeals found that a response to a FOIA request still qualified as a report for purposes of the federal public disclosure bar even after the statute was amended. That case, however, is distinguishable from the case at bar where the alleged fraud was perpetuated on the same entity that responded to the FOIA request.

that the information here was not publicly disclosed in the news media. The fact that there are numerous public disclosure methods that would bar a *qui tam* claim has no bearing on the meaning of a "State report" as used in the Act and as applied here.

¶ 20    In sum, we conclude that the circuit court erred in finding that the public disclosure bar prohibited relator's lawsuit, where the allegations supporting the fraud claims as obtained by relator from the FOIA responses were not from one of the listed sources in section 4(e)(4)(A) of the Act, namely, the alleged "public disclosure" did not contain allegations substantially similar to allegations publicly disclosed in "State reports." To the extent the Village argued that the information relator obtained from Lyons Township qualified as a "State report" under our interpretation, we note there was no assertion by the Village that the Lyons Township information otherwise met the obligations for the public disclosure bar, *i.e.*, that substantially the same allegations from the Lyons Township response detailing the amounts billed for each officer working in Lyons Township established the allegations of fraud. Instead, the Village acknowledged relator's claims were based only "in part" on the Lyons Township's FOIA response. The vast majority of documents supporting relator's claims were provided by the Village. Without satisfying the first of the four inquiries required to bring the relator's complaint within the Act's threshold public disclosure jurisdictional bar, we conclude the circuit court erred in dismissing the claims. As a result, we need not determine whether the relator's allegations were "publicly disclosed," whether the lawsuit was "based upon" the publicly disclosed allegations, or, if so, whether the relator is an "original source" of the information upon which his lawsuit was based.

¶ 21                                    II. Tort Immunity Act

¶ 22    Lyons Township next contends the circuit court erred in finding that relator's claims were barred by section 2-106 of the Tort Immunity Act. Initially, Lyons Township argues that the Tort Immunity Act does not apply to this case at all because relator's fraud claims were based on a contract between Lyons Township and the Village. In the alternative, Lyons Township argues that the Village's written misrepresentations are not immune from liability.

¶ 23    Section 2-101(a) of the Tort Immunity Act provides, in relevant part, that "[n]othing in this Act affects the liability, if any, of a local public entity or public employee, based on: (a) Contract." 745 ILCS 10/2-101(a) (West 2014). Although it is undisputed that Lyons Township and the Village were parties to a contract for police services and remitter of payment for parking fees, relator initiated a false claims action, not a contract action. We, therefore, find that the Tort Immunity Act does apply. See *DiMarco v. City of Chicago*, 278 Ill. App. 3d 318, 324 (1996) ("[i]t is evident from the manner in which the word 'contract' is employed in section 2-101 that the legislature meant to exclude causes of action under contract theory" and not merely causes of action based on *a* contract).

¶ 24    Because we find that the Tort Immunity Act does apply to relator's claims, we turn to the question of whether section 2-106 immunized the Village for the alleged fraud. In order to do so, we must rely on the previously discussed tenets of statutory construction. Most importantly, we must ascertain and give effect to the intent of the legislature. *Id.* To do so, we rely on the language of the statute, applying the plain or ordinary and popularly understood meaning to the words that appear. *Id.*

¶ 25    Section 2-106 of the Tort Immunity Act provides that "[a] local public entity is not liable for an injury caused by an oral promise or misrepresentation of its employee, whether or not

such promise or misrepresentation is negligent or intentional." 745 ILCS 10/2-106 (West 2014). The circuit court agreed with the Village in interpreting section 2-106 to immunize municipalities against negligent and intentional misrepresentations, both oral and written. In contrast, Lyons Township argues that the immunity applies only to oral promises or oral misrepresentations wherein the term "oral" modifies both "promise" and "misrepresentation."

¶ 26    Based on our analysis, we find the circuit court erred in applying section 2-106 to this case. Given the commonly understood principles of grammar and usage, we find the legislature intended for the adjective "oral" to modify both "promise" and "misrepresentation." The fact that the disjunctive term "or" was used does not negate the legislature's ability to use one adjective to modify multiple nouns. Moreover, reading the statute as a whole, we find additional support for our interpretation where the legislature did not repeat the word "oral" in the second half of section 2-106. If the legislature intended to immunize only oral promises and *all* misrepresentations by a municipal employee, it would have been incumbent on the legislature to expressly state that only oral promises, whether negligent or intentional, are immunized. Instead, as written, the statute limits its use of "oral" to a single mention because it modifies the entirety of the section. Moreover, in order to interpret the statute like the circuit court and the Village, we must assume the legislature employed improper grammar. Specifically, if "oral" only modifies "promise" then "misrepresentation" does not have a proper article where the statute would read "[a] local public entity is not liable for an injury caused by an *** misrepresentation of its employee, whether or not such promise or misrepresentation is negligent or intentional." We will not make such an assumption. We, therefore, conclude that the immunity applies only to oral misrepresentations by a municipal employee. Accordingly, section 2-106 does not apply to the case at bar wherein the alleged fraudulent activity was based on the *written* contract between the municipalities.

¶ 27    Finally, the Village argues that, in the alternative, section 2-107 applies to immunize it from liability. Section 2-107 of the Tort Immunity Act provides that "[a] local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous or for the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material." 745 ILCS 10/2-107 (West 2014). According to the Village, although not explicitly alleged by relator, the injuries must have been caused by a Village employee's "provision of information" wherein the time sheets and tickets must have been falsified and submitted by an unnamed, unspecified Village employee. The Village argues that, by extension, it is immunized from providing fraudulent payment claims.

¶ 28    As stated, in order to ascertain the intent of the legislature, we must construe a statute by applying the plain and ordinary meaning of the language used. *Solon*, 236 Ill. 2d at 440. In doing so, we may not depart from the plain language by reading into it exceptions, limitations, or conditions that conflict with the expressed intent. *Id.* at 440-41.

¶ 29    The plain language of section 2-107 protects municipalities from the actions of its employees that are "libelous or slanderous or for the provision of information." The critical language is that, in order for the immunity to have application to the municipality, the *employees'* actions must be injurious. Here, however, the Village attempts to extend the immunity to this case by forcibly making presumptions that an employee provided the

information in order to protect itself from its own fraudulent actions. There was no named employee to whom the injurious behavior was attributed nor was the injurious behavior the "provision of information." Instead, the Village itself was named as the entity engaging in fraud by submitting unsupported claims for payment. We find that the Village's interpretation of the immunity would require this court to read into the language exceptions, limitation, or conditions not expressed by its intent. Accordingly, based on the circumstances of this case, we conclude the immunity provided by section 2-107 of the Tort Immunity Act is not applicable.

¶ 30    In sum, we conclude that the Village's alleged actions were not immunized pursuant to the Tort Immunity Act.

¶ 31                                    CONCLUSION

¶ 32    We reverse this cause and remand it for further proceedings where relator's false claims action was not barred by the public disclosure provision of the Act and where the Village's alleged conduct was not immunized by the Tort Immunity Act.

¶ 33    Reversed and remanded.

¶ 34    PRESIDING JUSTICE GORDON, specially concurring.

¶ 35    While I concur in the result, I must write separately to clarify both the facts and the law. The facts in the majority's opinion are too short and incomplete to make it clear that there are two very separate state entities involved in this suit. Also, I believe that our analysis section needs a broader discussion of the United States Supreme Court's decision in *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401 (2011), and subsequent federal appellate opinions. In this special concurrence, I write separately to add those necessary facts and provide a broader discussion of *Schindler*.

¶ 36                                    I. Facts

¶ 37    John Kielczynski is both a retired police officer and a resident of unincorporated Lyons Township. On behalf of Lyons Township, he filed a civil suit against the Village of Indian Head Park, alleging that Indian Head Park police officers, whom Lyons Township was paying to patrol Lyons Township, were instead performing work for Indian Head Park.

¶ 38    Lyons Township and Indian Head Park had executed a contract, the purpose of which was "to provide mobile, well-equipped and trained police officers from the Indian Head Park Police Department to patrol and provide Police Protection in unincorporated areas within [Lyons] Township on a contract basis."

¶ 39    The contract states that Indian Head Park will provide a police officer to patrol unincorporated Lyons Township from 3 to 11 p.m. daily, as well as an additional officer on either Friday or Saturday from 7 to 11 p.m., for a total of 60 hours per week at a rate of $32.71 per hour. The contract states that the Indian Head Park officers will be "certified, trained officers (not auxillary)," and that they will work a total of 3120 hours per year patrolling specified "portions" of "unincorporated [Lyons] Township."

¶ 40    The complaint alleges that, instead of adhering to the terms of this contract, the Indian Head Park police officers were performing work in Indian Head Park at times when they

were to be patrolling Lyons Township. The complaint alleges at least 53 specific instances of fraudulent billing by Indian Head Park.

¶ 41 In addition, the complaint alleges at least 11 instances where fines from tickets written by Indian Head Park officers working in Lyons Township were paid, not to Lyons Township as required by the contract, but to Indian Head Park. The complaint alleges that Indian Head Park has "no records showing payment of any ticket revenue paid to LYONS."

¶ 42 Instead of seeking a specific amount, the complaint asks (1) that Indian Head Park be ordered to account for (a) all the time billed to Lyons Township for policing services and (b) all the revenue paid to Indian Head Park for tickets written in Lyons; (2) that Indian Head Park be ordered to pay Lyons Township three times the value of (a) the police time fraudulently billed to Lyons Township and (b) the ticket revenue owed; (3) that the court assess penalties against Indian Head Park for $1000 for each violation; and (4) that the court award attorney fees and costs.

¶ 43 In his brief to this court, Kielczynski argues that his suit is based on his observations as a resident, his experience as a police officer, and records he obtained from Indian Head Park pursuant to FOIA. Kielczynski argues that, after receiving Indian Head Park's responses to his FOIA requests, he performed his own independent analysis of them by utilizing his experience and knowledge as a police officer.

¶ 44                                    II. The Law

¶ 45 The trial court granted Indian Head Park's motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2014)). "A section 2-619 motion to dismiss admits the sufficiency of the complaint, but asserts a defense outside the complaint that defeats it." *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. "Specifically, section 2-619(a)(9) permits involuntary dismissal where the claim is barred by 'other affirmative matter.' " *Patrick*, 2012 IL 113148, ¶ 31. "When ruling on such motions, a court must accept as true all well-pleaded facts, as well as any reasonable inferences that may arise from them." *Patrick*, 2012 IL 113148, ¶ 31. Our review of a dismissal under section 2-619 is *de novo*. *Patrick*, 2012 IL 113148, ¶ 31.

¶ 46 The trial court granted Indian Head Park's motion to dismiss based upon the public disclosure bar in the Illinois False Claims Act (740 ILCS 175/4(e)(4) (West 2014)) and section 2-106 of the Illinois Local Governmental and Governmental Employees Tort Immunity Act (Illinois Tort Immunity Act) (745 ILCS 10/2-106 (West 2014)). I find the majority's discussion of the Illinois Tort Immunity Act persuasive (*supra* ¶¶ 21-30), but I must write separately concerning the Illinois False Claims Act.

¶ 47 Kielczynski brought this suit pursuant to the Illinois False Claims Act, which permits a member of the public to file suit on behalf of a state entity that has been defrauded when the state entity does not file suit or make a claim. See generally 740 ILCS 175/2(a) (West 2014) (listing covered state entities), and 740 ILCS 175/3(a) (West 2014) (describing the types of fraud). However, the suit may be barred if the information upon which it is based was publicly disclosed. 740 ILCS 175/4(e)(4) (West 2014).

¶ 48 The purpose of a public disclosure bar is to eliminate " 'parasitic' " lawsuits that are based on information of which the government is well aware and which then result in a windfall to "enterprising individuals." *United States ex rel. Moore & Co. v. Majestic Blue*

*Fisheries, LLC*, 812 F.3d 294, 297-99 (3d Cir. 2016) (discussing the public disclosure bar in the federal False Claims Act). See also 740 ILCS 175/4(d)(2) (West 2014) (if the State does not proceed with the action, the person bringing the action may receive between 25% and 30% of the proceeds of the action); *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 405 (2011) (when the government chooses not to intervene, the private party "stands to receive between 25% and 30% of the proceeds of the action" under the federal False Claims Act).

¶ 49     The trial court concluded that Kielczynski's suit on behalf of Lyons Township was based on information that was publicly disclosed because it was based on information which he had obtained through FOIA requests to Indian Head Park.

¶ 50     Thus, the first question in this suit is whether a response to a FOIA request qualifies as a "State report" under the Illinois False Claims Act, thereby triggering the public disclosure bar (740 ILCS 175/4(e)(4) (West 2014)). *Supra* ¶ 11.

¶ 51     In 2011, the United States Supreme Court found that a written response to a FOIA response did constitute a "report" under the federal False Claims Act's public disclosure bar. *Schindler*, 563 U.S. at 411. Specifically, the *Schindler* plaintiff had discovered, through FOIA requests to the Department of Labor, that a federal contractor had failed to make statutorily required reports to the Department of Labor. *Schindler*, 563 U.S. at 404-06. The Supreme Court found that the Department of Labor's FOIA responses were "report[s]" within the meaning of the federal public disclosure bar. *Schindler*, 563 U.S. at 411 ("The [Department of Labor]'s three written FOIA responses to Mrs. Kirk, along with their attached records, are thus reports within the meaning of the public disclosure bar."). *Schindler* is relevant because, as the majority observes, the Illinois False Claims Act is modeled on the federal act. *Supra* ¶ 10.

¶ 52     However, the *Schindler* opinion effectively distinguishes itself from the case at hand. In its first footnote, the *Schindler* court observed: "During the pendency of this case, the Patient Protection and Affordable Care Act, 124 Stat. 119, amended the public disclosure bar. Since the amendments are not applicable to pending cases, *Graham County Soil and Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 283, n. 1 (2010), this opinion refers to the statute as it existed when the suit was filed." *Schindler*, 563 U.S. at 404 n.1. See also *United States ex rel. Oliver v. Philip Morris USA Inc.*, 763 F.3d 36, 38 n.2 (D.C. Cir. 2014) ("The False Claims Act was amended on March 23, 2010, by the Patient Protection and Affordable Care Act. Pub. L. No. 111-148, § 10104(j)(2), 124 Stat. 119, 901-901 (2010). Those amendments do not apply to pending suits filed before their enactment. [Citation.] Accordingly, throughout this opinion we refer to the version of the [False Claims Act] that was in effect at the time [plaintiff] filed his complaint.").

¶ 53     As a result of the *Schindler* footnote, the federal cases most relevant to our discussion are cases (1) that were decided after March 23, 2010, *and* (2) that applied the 2010 amendment. Similarly, the only precedential Illinois cases are cases (1) that were decided after August 17, 2012, and (2) that applied our state's August 17, 2012, amendment, which was enacted to bring our act in line with the amended federal False Claims Act. See *supra* ¶ 16.

¶ 54     As a result, our search for the most relevant cases is within a limited time frame. Within this time frame, we have not found any precedential Illinois cases and only two relevant federal appellate court cases.

¶ 55    First, the Third Circuit Court of Appeals issued an opinion last year that contains a discussion of the history of the federal False Claims Act in general and the 2010 amendments in particular. *Moore*, 812 F.3d at 297-99. The court concluded that, even after the 2010 amendments, *Schindler*'s finding still applied, and that a response to a FOIA request still qualified as a report for purposes of the federal public disclosure bar. *Moore*, 812 F.3d at 302-03.

¶ 56    Specifically, the *Moore* plaintiff had discovered, through FOIA requests to the United States Coast Guard, that a vessel owner had provided false information to the United States Coast Guard. *Moore*, 812 F.3d at 300-01. Factually, the *Moore* case is similar to *Schindler*, 563 U.S. at 404-06. In both cases, the alleged fraud was perpetuated on the same entity, which responded to the FOIA requests.

¶ 57    Similarly, the Eighth Circuit applied the 2010 amendments in *United States ex rel. Kraxberger v. Kansas City Power & Light Co.*, 756 F.3d 1075, 1078 n.2 (8th Cir. 2014), and found that, under *Schindler*,[2] a FOIA response was a report for purposes of the federal public disclosure bar, where the plaintiff had discovered, through FOIA requests to the General Services Administration (GSA), that a federal contractor had defrauded the GSA. In all three cases—*Schindler*, *Moore,* and *Kraxberger*—the alleged fraud was perpetuated on the same entity that had supplied the FOIA information.

¶ 58    In contrast to these cases, the alleged fraud in the case at bar was perpetuated by a different entity. Indian Head Park and Lyons Township are considered separate entities that entered into an arms-length contract, which spelled out, in detail, the services to be performed and the payment for the service. Thus, the relevant federal opinions are readily distinguishable from the case at bar.

¶ 59    For these reasons, I concur with the majority's conclusion that, in this rare case, where one state entity is accused of defrauding another state entity, the fact that the alleged malfeasor made a FOIA response does not trigger the public disclosure bar for its alleged victim.

---

[2]The Eighth Circuit applied *Schindler* without first discussing whether *Schindler* still applied after the 2010 amendments. *Kraxberger*, 756 F.3d at 1078-79.