NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 180563-U

NO. 4-18-0563

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 13, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE STATE OF ILLINOIS *ex rel.* R. KURT WILKE and SAM XANDERS, | ) ) | Appeal from the Circuit Court of |
| Plaintiffs-Appellants, | ) | Sangamon County |
| v. | ) | No. 14MR1395 |
| AMERESCO, INC. | ) | |
| Defendant-Appellee. | ) | Honorable |
| | ) | Ryan M. Cadagin, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Turner and Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The appellate court affirmed, finding the trial court did not err in granting defendant's motion for summary judgment. The court properly found relators' *qui tam* claims under the False Claims Act were prohibited by the "public disclosure bar" within the Act, which precludes such claims based on information already placed in the public domain, and relators did not qualify under the "original source" exception recognized under the Act. The trial court also did not err in granting defendant's motion to strike certain exhibits from relators' summary judgment motion.

¶ 2            In December 2014, plaintiffs, the State of Illinois *ex rel.* Kurt Wilke and Sam

Xanders (relators), filed a *qui tam* action under sections 3 and 4 of the Illinois False Claims Act

(Act) (740 ILCS 175/1 *et seq.* (West 2014)) alleging defendant, Ameresco, Inc., fraudulently

misrepresented information to two school districts to induce them to enter into performance

contracts for the installation of energy conservation measures in their schools. In May 2016,

relators filed a motion for partial summary judgment, claiming the contracts were void as

violative of section 19b and the competitive bidding requirements of the Illinois School Code (105 ILCS 5/19b-1 *et seq.*(West 2014), 105 ILCS 5/10-20.21 (West 2014)). Relators contended as a result of contractual provisions stipulating to savings, the "guaranteed energy savings" provisions required by section 19b of the School Code were improperly circumvented and competitive bidding otherwise required by the School Code was avoided. Defendant denied the allegations and contended the trial court was not obligated to reach the issue of what was required by section 19b since relators' claims were barred by the "public disclosure bar" of the Act (740 ILCS 175/4(e)(4)(A) (West 2014)).

¶ 3        In September 2016, defendant filed a motion for summary judgment contending the "public disclosure bar" contained within the Act precluded relators from bringing their claims under the *qui tam* provisions of the Act and asking the court to dismiss the case on jurisdictional grounds.

¶ 4        In July 2018, the cross-motions were heard along with a motion filed by defendants in August 2017 asking to strike two exhibits from relators' reply in support of their partial summary judgment motion and in opposition to defendant's motion. At the conclusion of the hearing, ruling from the bench, the trial court found the public disclosure bar within the Act applied and dismissed the case. The parties asked to submit a written order, which was ultimately approved and signed in April 2018.

¶ 5        On appeal, relators contend the trial court erred by concluding they did not fall within the "original source" exception to the public disclosure bar found within the Act and therefore should not have dismissed their claims. We affirm.

¶ 6                                I. BACKGROUND

¶ 7                                   A. The Act

¶ 8        In order to better understand the procedural history of this case, it is necessary to provide a not-so-brief discussion of the Act. The Act (740 ILCS 174/1 *et seq.* (West 2014)) is an anti-fraud statute providing the State of Illinois with a cause of action to recoup losses resulting from false or fraudulent claims primarily by, but not limited to, private vendors, through the imposition of civil liability on anyone who defrauds the state with such claims. To establish liability under the Act, a relator generally needs to prove (1) that the defendant made a statement in order to receive money from the government, (2) that the statement was false, and (3) that the defendant knew the statement was false. *United States ex rel. Yannacopoulos v. General Dynamics*, 652 F.3d 818, 822 (7th Cir. 2011). The attorney general is authorized under the Act to pursue recovery of civil penalties and treble damages for the state. There is also a "*qui tam* provision" within the statute that allows for private citizens, known as relators, to bring a civil action on behalf of themselves and the state. "A person may bring a civil action for a violation of [the Act] for the person and for the State. The action shall be brought in the name of the State." 740 ILCS 175/4(b)(1) (West 2014).

¶ 9        A relator must notify the state of its intention to proceed, and if the state declines to pursue the matter, the relator can then proceed on his own behalf. If the relator is successful in proving the false claim, he can receive up to 30% of the proceeds or settlement as the party responsible for disclosing the fraud and recovering the funds. See 740 ILCS 175/4 (West 2014). Under a *qui tam* action, the Illinois Attorney General's Office has authority to intervene at any point in the proceedings. See 740 ILCS 175/4 (c) (West 2014).

¶ 10        The Act is modeled directly after the federal False Claims Act (31 U.S.C. §§ 3729, 3730 (2009)). See *United States ex rel. Humphrey v. Franklin-Williamson Human Services*, 189 F. Supp. 2d 862, 867 (S.D. Ill. 2002) (the Illinois Act tracks the relevant provisions

of the federal False Claims Act almost word for word, substituting the appropriate state references for the federal ones, and because the two acts are "virtually identical in all relevant aspects," the court will look to federal False Claims Act case law for guidance); see also *People ex rel. Lindblom v. Sears Brands, LLC.*, 2019 IL App (1st) 180588, ¶ 29 (because the Illinois Act closely mirrors the federal False Claims Act, we may look to federal law for guidance in construing the Act).

¶ 11            The purpose of the Act is to penalize those who submit or cause to be submitted false or fraudulent claims to the state for payment. It also penalizes those who make or use false statements to get a false or fraudulent claim paid. 740 ILCS 175/3(a) (West 2014). The Act intends, however, that the facts surrounding the false claim be based on information not already known or otherwise available to the government, and that the inside information comes from a true "whistleblower" and not merely a self-serving opportunist who does not possess their own inside information. See *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 915 (7th Cir. 2009). He cannot be merely repeating information which is already publicly available unless he is able to add materially to it with information independently obtained. *State ex rel. Beeler, Schad & Diamond, P.C. v. Target Corp.*, 367 Ill. App. 3d 860, 867, 856 N.E.2d 1096, 1103 (2006). "Where a public disclosure has occurred, [the government] is already in a position to vindicate society's interests, and a *qui tam* action would serve no purpose." *United States ex rel. Feingold v. AdminaStar Federal, Inc.*, 324 F.3d 492, 495 (7th Cir. 2003). For that reason, the Act contains a "public disclosure bar" to *qui tam* actions.

> "The court shall dismiss an action or claim under [the Act], unless
> opposed by the State, if substantially the same allegations or

- 4 -

transactions as alleged in the action or claim were publicly

disclosed:

(i) in a criminal, civil, or administrative hearing in which

the State or its agent is a party;

(ii) in a State legislative, State Auditor General, or other

State report, hearing, audit, or investigation; or

(iii) from the news media,

unless the action is brought by the Attorney General or the person

bringing the action is an original source of the information." 740

ILCS 175/4(e)(4)(A) (West 2014).

¶ 12     As we noted above, since the Act closely mirrors its federal counterpart, our

courts have looked to federal case law for guidance, especially when analyzing the public

disclosure bar. *Humphrey*, 189 F. Supp. 2d at 867; see also *Target Corp.*, 367 Ill. App. 3d at 865.

¶ 13     In order to determine whether the "public disclosure bar" applies to a particular

complaint, the court is to conduct a multi-step analysis. *Lyons Township ex rel. Kielczynski v.*

*Village of Indian Head Park*, 2017 IL App (1st) 161574, ¶ 11, 84 N.E.3d 1118, lays out a four-

part inquiry to avoid dismissal under a *qui tam* action:

"(1) whether the alleged 'public disclosure' contains allegations or

transactions from one of the listed sources of section 4(e)(4)(A) of

the [False Claims] Act [citation]; (2) whether the alleged

disclosure was made 'public' within the meaning of the [False

Claims] Act; (3) whether the relator's complaint is 'based upon'

the 'public disclosure'; and (4) if the answer is positive for the

prior three inquiries, whether the relator qualifies as an 'original

source' under section 4(e)(4)(B) of the [False Claims] Act

[Citations.]."

¶ 14      If the court's answer is "no" to any of the first three questions, then the inquiry

ends there and the *qui tam* plaintiffs can proceed. If the answer to each of the first three is "yes,"

then the only exception to the bar will apply if the relator qualifies as an "original source" of the

information. See *Target Corp.*, 367 Ill. App. 3d at 868. At each stage of the analysis, the relator

bears the burden of proof. *United States ex rel. Absher v. Momence Meadows Nursing Center,

Inc.*, 764 F.3d 699, 707 (7th Cir. 2014). The analysis in *Lyons Township* has its genesis in the

federal courts. As courts of limited jurisdiction, failure to meet the test results in a lack of subject

matter jurisdiction. Although our circuit courts are considered courts of general jurisdiction, the

four-step test in *Lyons Township* still serves to determine whether the "public disclosure bar"

may apply under the Illinois False Claims Act.

¶ 15      "To trigger the public-disclosure bar of [section (e)(4)(A) of the Act], it is not

enough that allegations of wrongdoing have been publicly disclosed; the relator's allegations

must also be 'based upon' the public disclosure." *Glaser*, 570 F.3d at 914. Prior to *Glaser*, the

Seventh Circuit held such suits were "based upon" publicly disclosed information when they

" 'depend[ed] essentially upon publicly disclosed information and [were] actually derived from

such information.' " *Glaser* 570 F.3d at 914 (quoting *United States v. Bank of Farmington*, 166

F.3d 853, 864 (7th Cir. 1999)). In *Glaser*, the court revisited that interpretation in light of the fact

its basic dictionary definition was in the significant minority among federal circuits. It concluded

such an interpretation defeated the purpose of the original-source exception and adopted the

majority view: "a relator's FCA complaint is 'based upon' publicly disclosed allegations or

transactions when the allegations in the relator's complaint are substantially similar to publicly disclosed allegations." *Glaser* 570 F.3d at 920. "Substantially the same" does not mean the allegations and the publicly disclosed information have to be identical. A lawsuit that is even partially dependent upon the publicly disclosed information can prompt the public disclosure bar. See *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654-55 (D.C. Cir. 1994) (the focus is on the quantum of information already publicly disclosed rather than the amount or quality of information brought forward by the *qui tam* plaintiff.); *United States ex rel. Precision Co. v. Koch Industries, Inc.*, 971 F.2d 548, 552 (10th Cir. 1992) ("an FCA *qui tam* action even partly based upon publicly disclosed allegations or transactions is nonetheless 'based upon' such allegations or transaction", within the meaning of section 4(e)(4)(A)). "Thus, a *qui tam* action cannot be sustained where all of the material elements of the fraudulent transaction are already in the public domain and the *qui tam* relator comes forward with additional evidence incriminating the defendant." *Quinn*, 14 F.3d at 655. The relator has to possess substantive information about the particular fraud it claims to have uncovered, as opposed to merely providing background information which allows the relator to understand the significance of the publicly disclosed transaction. See *United States ex rel. Stinson, Lyons, Gerlin & Bustamente, P.A. v. Prudential Insurance Co.*, 944 F.2d 1149, 1160 (3d Cir. 1991).

¶ 16        In order to qualify as an "original source" and avoid the bar, the relator must have direct and independent knowledge of the information on which the allegations are based. 740 ILCS 175/4(e)(4)(B) (West 2014). This means the information which forms the basis for the underlying allegations of the relator's actions, not the information on which the publicly disclosed transactions triggering the public disclosure bar were based. See *Rockwell International Corp. v. United States*, 549 U.S. 457, 471-72, 127 S. Ct. 1397, 1408 (2007). Even

- 7 -

if the information has been publicly disclosed, the relator must have either voluntarily provided the same information to the government before filing or be in possession of information which was independent of and "materially" adds to the publicly disclosed information which has also been provided to the government before filing suit. 740 ILCS 175/4 (e)(4)(B) (West 2014).

¶ 17    Voluntarily providing the disclosure to the state means the disclosure must be made sufficiently in advance of the filing in order to provide enough time for the state to engage in proper investigation and verify the relator's status as a genuine whistleblower. *Bank of Farmington*, 166 F.3d at 865-866, *abrogated on other grounds* by *Glaser*, 570 F.3d at 915.

¶ 18    While a specific time period is not outlined within the statute, it is well settled that only hours or even a couple of days to provide the disclosure to the state in advance of filing is not a sufficient amount of time required by the statute. *United States ex rel. Ackley v. International Business Machines Corp.*, 76 F. Supp. 2d 654, 668 (D. Md. Nov. 17, 1999), *abrogated on other grounds by United States ex rel. Fadlalla v. DynCorp International LLC.*, 402 F. Supp. 3d 162, (D. Md. 2019).

¶ 19                              B. Procedural History

¶ 20    In December 2014, relators filed a *qui tam* action under the Act (740 ILCS 175/4 (West 2014)) alleging defendant, an independent energy service contractor, perpetrated a fraud on the school districts of Ball-Chatham and Taylorville. Relators alleged defendant did this by inducing the districts to enter into contracts which were alleged to falsely represent guaranteed savings in compliance with section 19b of the Illinois School Code (105 ILCS 5/19b-1.2 (West 2014)), by stipulating to energy savings and thus eliminating the required guarantees under the statute (105 ILCS 5/19b-1.2 (West 2014)). What are commonly referred to as "section 19b contracts" are an exception to the usual requirement for competitive bidding in any Illinois

school district involving proposed contracts in excess of $50,000. If the school district is entering into a "guaranteed energy savings contract" with a "qualified provider" as defined in sections 19b-1.2 and 1.3, the district is permitted to proceed through negotiated procurement rather than competitive bidding. 105 ILCS 5/19b-1.2, 19b-1.3, 19b-1.4 (West 2014). This process permits the district to publish requests for proposals, which solicit interested vendors or providers to submit proposals meeting the criteria set forth by the district and from which the district has the discretion to select. Under the terms of a guaranteed energy savings contract, also known as a performance contract, energy savings "are guaranteed to the extent necessary to pay the costs of the energy conservation measures" by the energy contractor. 105 ILCS 5/19b-1.2 (West 2014). Here, the relators contended defendant negotiated with the school boards with assurances of guaranteed savings or promises to reimburse the districts for any shortfalls, when in fact, the contract which the boards ultimately approved provided for "stipulated" savings. The proposed contracts contained no written guarantee that the actual energy and/or operational cost savings resulting from defendant's proposed energy savings measures would meet or exceed the cost of implementing the measures, contrary to the statutory requirements of a guaranteed energy savings contract. Relators further alleged as a result of these misrepresentations, defendants submitted invoices for payment totaling $2,207,091 to the Chatham School District and $12,281,167.98 to the Taylorville School District, and all invoices were paid with public funds.

¶ 21        As a result of the alleged deficiencies in the contracts and the process by which they were procured, relators alleged the contracts were void as violative of the Illinois School Code and the Act and sought reimbursement to the school districts, treble damages as provided under the Act, and a relator's award. As required under the Act, relators provided the Illinois attorney general with "[a] copy of the complaint and written disclosure of substantially all

material evidence and information the person possesses" in order to determine whether the State would elect to proceed with the case. 740 ILCS 175/4(b)(2) (West 2014). The Illinois attorney general elected not to intervene in the *qui tam* action and has taken no position on the merits of relators claim. He did, however, submit a statement of interest on the State's behalf during the circuit court proceedings in order to correct what he believed to be relators' erroneous interpretation of the Act's public disclosure bar.

¶ 22 After several preliminary motions directed to the pleadings, in May 2016, relators filed a motion for partial summary judgment, contending the contracts entered into between the districts and defendant were void as a matter of law and therefore the proper subject for summary judgment. In September 2016, defendant filed a motion for summary judgment claiming the material elements of relators' allegations were based on information they obtained from publicly disclosed facts in which they had no independent knowledge and are thus precluded from forming the basis of a cause of action by the "public disclosure bar." Furthermore, defendant argued relators were not an "original source" of the alleged fraudulent information, and the undisputed facts revealed no fraudulent inducement. Relators sought to avoid application of the public disclosure bar by contending the reference to "the State" found in section 4(e)(4)(A) of the Act (740 ILCS 175/4(e)(4)(A)(West 2014)): "The court shall dismiss an action or claim under this Section, *unless opposed by the State*, *** (emphasis added)" included the school districts themselves. Relators then claimed both the Ball-Chatham and Taylorville school districts passed resolutions objecting to dismissal, attaching copies of the resolutions to their pleadings.

¶ 23 Defendant filed a motion to strike these affidavits, claiming the exhibits were not properly before the court because: (1) the two school districts were not parties to the suit, (2) the

exhibits contain inadmissible hearsay, and (3) the "State," as used in the statute, is the Illinois attorney general, who possesses the exclusive power to represent the State or intervene on its behalf in a false claim action. In August 2017, the Illinois Attorney General filed a statement of interest arguing the Illinois attorney general has the sole authority to oppose dismissal of a *qui tam* action on the basis of the public disclosure bar under the Act. In April 2018, the trial court granted defendant's motion and struck relators' uncertified copies of the school districts' "resolutions." The court noted the Illinois Supreme Court has held the *qui tam* provisions of the Act constitutional for the precise reason that it allows the Illinois attorney general to retain authority and control over the litigation at every stage of the proceeding. See *Scachitti v. UBS Financial Services*, 215 Ill. 2d 484, 510-11, 831 N.E.2d 544, 560 (2005).

¶ 24        At the hearing on defendant's motion for summary judgment in July 2018, defendant argued the information relied upon by relators as the basis for their claim was obtained through Freedom of Information Act (FOIA) requests from civil litigation in which they had been involved or from public online sources. Neither relator was on the Ball-Chatham school board during the times relevant to their claims, and neither worked for the Taylorville school district at any time. Additionally, defendant asserted the affidavits provided by relators added nothing new or material but simply confirmed information previously and publicly disclosed. Defendant contended relators would not have learned of the allegations or transactions independent of the public disclosures and are not insiders or whistleblowers. Furthermore, defendant argued relators' complaint is the same or substantially the same as the information publicly disclosed, and they are therefore precluded from bringing their *qui tam* action by the public disclosure bar.

¶ 25 Relators argued FOIA was intended to promote transparency and accountability and it should not be an absolute bar under the Act. Additionally, relators claim they materially added to the information received from their FOIA requests by supplementing it with information from Open Meetings Act (5 ILCS 120/2 (West 2014)) litigation and affidavits from a former school board member and former Ameresco employee. The trial court found the public disclosure bar applicable in this case and entered an order granting defendant's motion for summary judgment.

¶ 26 This appeal followed.

¶ 27 II. ANALYSIS

¶ 28 Relators argue the trial court erred by: (1) finding the public disclosure bar applied to them, (2) failing to recognize how they materially added to the already known information to a degree sufficient to fall under the "original source" exception, (3) failing to recognize the right of the school boards to object to dismissal under the Act, and (4) granting defendant's motion for summary judgment. Further, they argue the trial court erred by striking the copies of the school board resolutions they attached to their summary judgment pleadings. We disagree and affirm.

¶ 29 "Summary judgment is appropriate where 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Ioerger v. Halverson Construction Co*., 232 Ill. 2d 196, 201, 902 N.E.2d 645, 648 (2008) (quoting 735 ILCS 5/2-1005(c) (West 2000)). It is appropriate where the nonmoving party has failed to establish a material element of the cause of action and where there is no genuine factual dispute. "Summary judgment is to be encouraged in the interest of prompt disposition of

- 12 -

lawsuits, but as a drastic measure it should be allowed only when a moving party's right to it is clear and free from doubt." *Pyne v. Witmer*, 129 Ill. 2d 351, 358, 543 N.E.2d 1304, 1307 (1989). The court must construe the pleadings, depositions, admissions, exhibits, and affidavits on file strictly against the movant in determining whether a genuine issue of material fact exists. *Johnson v. American Family Mutual Insurance Co.*, 193 Ill. App. 3d 794, 799, 550 N.E.2d 668, 671 (1990).

¶ 30    On appeal from a trial court's decision to grant a motion for summary judgment, our review is *de novo*. *Bowles v. Owens-Illinois, Inc*., 2013 IL App (4th) 121072, ¶ 19, 996 N.E.2d 1267.

¶ 31                                A. Public Disclosure

¶ 32    "The public-disclosure bar aims 'to strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits' in which a relator, instead of plowing new ground, attempts to free-ride by merely reiterating previously disclosed fraudulent acts." *United States ex rel. Beauchamp v. Academi Training Center*, 816 F.3d 37, 43 (4th Cir. 2016) (quoting *Graham County Soil & Water Conservation District v. United States ex rel. Wilson*, 559 U.S. 280, 295 (2010)). Under the Act, information is publicly disclosed when "the critical elements exposing the transaction as fraudulent are placed in the public domain." *Feingold*, 324 F.3d at 495. Written responses and information provided pursuant to FOIA requests constitute public disclosures under the Act. *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 411, 131 S. Ct. 1885, 1893 (2011). Information gathered from public websites before filing a claim also constitute "news media" under the Act's disclosure prohibition. *Beauchamp*, 816 F.3d at 43. The term "in the course of a civil, criminal, or administrative hearing" under the public disclosure bar "should be interpreted broadly to include allegations and information

- 13 -

disclosed in connection with civil, criminal, or administrative litigation." (Internal quotation marks omitted.) *Prudential Insurance*, 944 F.2d at 1156.

¶ 33    Relators acknowledge in their brief "some, but not all of the documents relied on by [them] to state a claim were obtained by [FOIA] requests to the school districts." They also agree they "obtained some documents from the Chatham district in [Open Meetings and FOIA] litigation" which arose out of their requests for information relating to the allegations of their complaint. In their pleadings before the trial court—and briefs before this court—they acknowledge receiving information from public websites. In their depositions, both plaintiffs admitted receiving their information, in large part, from FOIA requests and from Illinois State Board of Education public websites. The requests for proposals, memoranda of understanding, board resolutions to approve the contracts, the contracts and attachments, e-mails between the relevant individuals for the school districts and defendant, change orders, invoices, and board meeting minutes, both open and closed, were all public record and accessible to anyone willing to search for them. As noted above, although both served on the Ball-Chatham school board at one time, neither relator was on the Ball-Chatham school board during the times relevant to their claims, and neither worked for the Taylorville school district at any time. As a result, they admitted in their depositions they had no first-hand knowledge of any information forming the bases of their claims. Relator Wilke was asked in his deposition:

> "Q. So, is it fair to say that the, that the earliest that you ever learned about what you believe to be fraudulent activity of Ameresco in relation to Taylorville was when you received the FOIA response with respect to the Taylorville documents?
>
> A: That's correct. Well, let me back up a minute. No. That's correct."

Wilke acknowledged having never been present during any conversations, involved in any negotiations, or present during any school board meetings where the particulars of the contracts were discussed. He could point to no information contained in the complaint which was based on his first-hand knowledge.

¶ 34　At Xanders's deposition, he testified the information forming the basis of the Taylorville allegations came from FOIA requests, an Open Meetings Act and FOIA lawsuit, and public websites. In fact, Xanders explained in his deposition how the original complaint had already been filed when he began searching for documents from other school districts on a public website and found those relating to the Taylorville School District. As a result, the original complaint, filed in December 2014, was amended to add the Taylorville School District contracts in July 2015. He also acknowledged having never worked for the district or having been involved with any negotiations with defendant. He admitted he had no first-hand knowledge of any of the work performed for either school district by defendant pursuant to the contracts and said he never heard about 19b contracts until he began "reading the minutes and agenda items of Ball-Chatham school district" in 2013, long after he was off the school board. Xanders was asked, similarly to relator Wilke:

> "Q. Are all of the allegations of the amended complaint that relate specifically to Taylorville arise [*sic*] out of the FOIA response that was given to you by Taylorville?
>
> A: Well, no, because the payments that were made came from or at least the initial discovery that the payments were made came from the statement of affairs [(which he previously indicated was filed with the State Board of Education and published in the newspaper)].

Q. Okay. Other than the FOIA response and the annual statement of affairs, which did you find it on the local, [*sic*] from the local paper or from the Illinois State Board of Education?

A. I would have gotten it from the State Board of Education [website]."

¶ 35 With regard to the Ball-Chatham claims, Xanders testified that while volunteering at the schools in 2013, he started reviewing documents on the Ball-Chatham server. These included board meeting agendas, videos, and minutes of meetings. He then began sending FOIA requests to the district in August 2013, asking for defendant's contracts and attachments. Xanders acknowledged having never been present at any board meeting where defendant's contract was discussed in 2010 but said he "viewed" the contracts during his volunteer work years later. He also agreed he had no direct conversations with any of the participants in the contractual agreement between either school district and defendant at or around the time the contracts were either negotiated or signed.

¶ 36 The public disclosure bar in the Act requires the court to dismiss any claim if "substantially the same allegations or transactions" as those alleged in the complaint have already been publicly disclosed in, among other things, a "State report" or "from the news media." 740 ILCS 175/4(e)(4)(A)(ii), (iii) (West 2014). The Act does not require public disclosures themselves to allege fraud in order to be subject to the bar. See *Absher*, 764 F.3d at 708 (Public disclosure need not include allegation of fraud. The public disclosure bar may apply so long as the facts disclosing fraud are in the government's possession or the public domain.); see also *Cause of Action v. Chicago Transit Authority*, 815 F.3d 267, 278 (7th Cir. 2016)(quoting *Absher*, 764 F.3d at 708 (all that is required is that " '[the] facts establishing the essential

elements of fraud—and consequently, providing a basis for the inference that fraud has been committed—are in the government's possession or the public domain' ").

¶ 37       The public disclosures in this case do not involve allegations of fraud. Instead, relators conclude there must have been fraud based on the information regarding the transactions and interactions between school officials and representatives of Ameresco they compiled for their complaint, coupled with their interpretation of section 19b contracts under the School Code. Relators contend the information itself, when properly considered, reveals the fraud they allege occurred. However, this information came from sources all covered under the public disclosure bar of the Act. Relators acknowledged under oath how most of the factual assertions made in their claims came from FOIA responses. The United States Supreme Court defined "report" for purposes of the federal False Claims Act and found a broad interpretation was "consistent with the generally broad scope of the FCA's public disclosure bar." They also found the bar's reference to "allegations or transactions" was meant to be interpreted broadly as well. *Schindler Elevator Corp.*, 563 U.S. at 408. As a result, they concluded a written agency response to a FOIA request falls within the ordinary meaning of "report," along with any records or attachments provided in response. *Schindler Elevator Corp.*, 563 U.S. at 411.

¶ 38       Relators further acknowledge having searched Illinois State Board of Education, Taylorville, Ball-Chatham, and the State Capital Development Board websites, along with local newspapers, for information which helped form the basis for their claims of fraud. All of these qualify as "news media" under section 4(e)(4)(A)(iii) (740 ILCS 175/4(e)(4)(A)(iii) (West 2014)) and are also subject to the public disclosure bar. In fact, in *Schindler*, the United States Supreme Court noted how the inclusion of "news media, suggest[s] that the public disclosure bar provides a broa[d] sweep." (Internal quotation marks omitted.) *Schindler*, 563 U.S. at 408. In

*Beauchamp*, the court noted federal courts have uniformly defined "public disclosure" to include websites and online articles. *Beauchamp*, 816 F.3d at 43, n.6. Obviously, newspapers fall within the same definition. See *United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 813 (2015).

¶ 39        Relators contend some of their information came only as a result of forced disclosure pursuant to filing Open Meetings Act and FOIA lawsuits against Ball-Chatham and threats of suit against Taylorville. This does not change the public nature of the disclosures. Even the statute provides for public disclosure for matters disclosed "in a criminal, civil, or administrative hearing in which the State or its agent is a party." 740 ILCS 175/4(e)(4)(A)(i) (West 2014). Here, the school boards of Taylorville and Ball-Chatham are properly considered "state agencies" for purposes of the public disclosure bar. See 740 ILCS 175/2(a) (West 2014) ("(a) 'State' means *** any school district ***"); *Lyons Township*, 2017 IL App (1st) 161574, ¶ 11. Federal courts are uniform in finding documents discovered or obtained in litigation fall within the meaning of "publicly disclosed." See *Prudential Insurance*, 944 F.2d at 1156 (holding information gleaned in litigation and on file in the clerk's office included as information equally available to strangers to the fraud transaction had they chosen to look for it);*United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1350 (4th Cir. 1994) (any information disclosed through civil litigation and on file with the clerk's office should be considered a public disclosure for the purpose of the False Claims Act).

¶ 40        It is clear from the record the basis of relators' claims stem from documents procured through FOIA requests or which were otherwise publicly disclosed. The information existed in publicly displayed budgets, documents filed with the state, readily accessible board meeting minutes, documents from other litigation, and information actively sought by relators

through Internet searches. This is contrary to the whole purpose of whistleblower statutes. It is not enough that relators merely parrot what is publicly available or troll for public records as they did here. Remember, Xanders testified he first began searching for public records regarding the Ball-Chatham 19b performance contract with defendant, and after filing suit, he began searching for records of other school districts who had contracts with defendant. This is the classic example of opportunistic litigation described by the United States Supreme Court in *Schindler*, which the public disclosure bar is designed to prevent, where anyone could have served the same FOIA requests, read the same public documents, and filed the same *qui tam* action under the Act.

¶ 41                                   B. Substantially the Same

¶ 42          Once the determination is made that relators' claims are based on publicly disclosed information, the inquiry turns to whether allegations or information in the claims are "substantially the same" as those within the publicly disclosed documents. 740 ILCS 175/4 (e)(4)(A) (West 2014).

¶ 43          "Substantially the same" does not mean exactly the same. Even additional information that has not been publicly disclosed does not prevent the application of the public disclosure bar if material elements of the fraud have already been publicly disclosed. *Quinn*, 14 F.3d at 654. A simplistic formula was used in *Quinn* to illustrate how to determine whether the allegations contained in relators' complaint are "substantially the same" as the information publicly available. Using $X + Y = Z$, with Z representing the allegation of fraud, and X and Y representing its essential elements, the court said if the elements for an allegation of fraud are already public $(X + Y)$, from which the reader or listener could then conclude fraud had been committed (Z), the prohibition against a *qui tam* action applies. Equally so, if either the

fraudulent transaction (X + Y) or the allegation of fraud (Z) are already known, the government is in the position to act and there is no reason for a *qui tam* action. Even if it takes special training or knowledge to put X + Y together to form Z, if all the facts forming X + Y are public, the bar still applies. *Quinn*, 14 F.3d at 654-655.

¶ 44 The record before us reveals relators relied exclusively on publicly disclosed documents which contained the "material elements of the fraud" to formulate the basis of their complaint alleging defendant defrauded the Taylorville school district. Thus, a *qui tam* action cannot be sustained where all of the material elements of the fraudulent transactions are already in the public domain and the *qui tam* relator comes forward with additional evidence incriminating the defendant. *Quinn*, 14 F.3d at 654. This is also true where "all of the critical elements of fraud have been publicly disclosed, but in a form not accessible to most people." *Quinn*, 14 F.3d at 655. "The relator must possess substantive information about the particular fraud, rather than merely background information which enables a putative relator to understand the significance of a publicly disclosed transaction or allegation." *Prudential Insurance*, 944 F.2d at 1160.

¶ 45 Relators argue their claims against defendant for allegedly defrauding the Ball-Chatham school district are not substantially the same as publicly disclosed materials because relators have provided affidavits from a former school board member of the district and a former employee of defendant. The affidavit of the former school board member details a school board meeting where members of the board questioned an Ameresco representative about the proposed contract. The other affidavit is from a former Ameresco employee who was the lead project developer for the Ball-Chatham school district project before he was terminated in 2010 and before the completion of the project. He provided a presentation of the Ameresco contract to the

school board during one of its meetings. The affidavit describes his duties under the project and a summary of what he presented to the school board. However, both affidavits contain information that was already publicly disclosed via FOIA request or disseminated on public websites and fail to materially add anything not publicly disclosed—they merely repeat it.

¶ 46 During the hearing on the summary judgment motion, relators argued their depositions materially added to their claims against defendant. However, their deposition testimony consisted of their opinions and not material elements of any fraud. For example, counsel at the motion said, "Mr. Xanders testified *** that he talked to a project manager from B & B who did the Ameresco work at Chatham, and he was informed that they replaced T8 [lightbulbs] with more efficient T8 [lightbulbs]. There's no way those savings could have matched the contract costs"; and regarding Mr. Wilke describing one of the affidavits, "[t]he Board voted on the contract, and [the board member] recalled statements that were made about the guarantees and approved the contract based on those statements. You want fraud, there's fraud." In other words, relators took the facts they uncovered through their search of public records and documents and concluded there must have been fraud of some kind. Even they acknowledge no one else has, at any time, claimed there was fraud in the negotiation and servicing of the contracts.

¶ 47 In analyzing whether a relator has "materially added" anything to the public disclosure, the Seventh Circuit has focused on whether the relator's allegations are substantially similar to the publicly disclosed documents. See *Chicago Transit Authority*, 815 F.3d at 283 (finding because relators' claims were substantially similar to the information contained within the publicly disclosed audit report, relators did not materially add anything to the public disclosure.)

¶ 48          All of the material elements of the alleged fraud were obtained from the documents procured through FOIA responses or found on public websites. Relators claim the affidavits and other information obtained differs from information publicly disclosed. However, being different does not make it material. All of the information regarding the requests for proposals, how Ameresco ended up with the contracts, the terms of the contracts and process of negotiation, board meeting minutes discussing the contracts and their approval, all documents and records relating to the contracts, performance, and payment, were part of the public record. The only thing missing were relators' opinions about the securing of the contracts and compliance with section 19b of the School Code. It was their opinion the process disclosed by the public records was flawed, that the guarantees required by the statute were improperly or illegally circumvented by the "stipulated savings" language in the contracts, and the state bidding procedures were not properly followed by the change orders. Even when confronted with information in the same records revealing both legal counsel and qualified engineers signed off on the projects and the boards of each school district relied upon the opinions of their legal counsel when they approved the contracts, relators maintained there *must* have been fraud involved. However, relators failed to identify any additional information which materially added to conclusions they reached based upon their review of information previously obtained via public disclosures. The essential material elements of the alleged fraud were already publicly disclosed. *Quinn*, 14 F.3d at 654. Therefore, relators claim is substantially the same as the publicly disclosed "allegations or transactions," and their claims must be dismissed unless they demonstrate they were the original source.

¶ 49                          C. Original Source

¶ 50          If the trial court determines the public disclosure bar applies to a *qui tam* action, relators can still avoid dismissal if they can prove they were the original source of the publicly disclosed information. *United States ex rel. Ziebell v. Fox Valley Workforce Development Board, Inc.*, 806 F.3d 946, 952 (7th Cir. 2015).

> " '[O]riginal source' means an individual who either (i) prior to a public disclosure under subparagraph (A) of this paragraph (4), has voluntarily disclosed to the State the information on which allegations or transactions in a claim are based, or (ii) has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the State before filing an action under this Section." 740 ILCS 175/4 (e)(4)(B) (West 2014).

¶ 51          To qualify as an original source, a relator must demonstrate that he shared with the government, before filing suit, information that is "independent of the public disclosures and that materially adds to the information that had been publicly disclosed." (Internal quotation marks omitted.) *Fadlalla*, 402 F. Supp. 3d at 181.

¶ 52          The record reflects relators have no independent knowledge of the information on which their claim is based. Relators were not privy to any direct knowledge concerning the alleged fraud, and according to the record before us, learned all of the material elements of the alleged fraud through public disclosures or second-hand information. Instead, Xanders started searching through the public records of the Ball-Chatham School District until he found enough to convince himself there was fraud. After filing suit in that case, he began trolling public records of the state Central Management Services and filing FOIA requests until he found another school

district, Taylorville, which had similar contracts. All of these undertakings could have been performed by any member of the public. *Prudential Insurance*, 944 F.2d 1149.

¶ 53 Relators claimed they materially added information which qualified them as an original source. When prompted at the motion for summary judgment hearing, counsel for relators argued the materially added information consisted of light bulbs, second-hand statements made by the superintendent, and an affidavit from the school board member who was at the presentation by the Ameresco representative. However, this information was already included within FOIA responses or located on public websites and does not constitute "materially added" information sufficient to qualify them as an original source.

¶ 54 Although information obtained from litigation falls within the "publicly available" definition, relators argue the holding in *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries*, *LLC*, 812 F.3d 294, 300 (3rd Cir. 2016), supports their position that information obtained from a lawsuit can materially add to a relator's claim. In *Moore*, the Third District found the relator was able to provide independent information that materially added to the previously disclosed information after relator was able to uncover "essential factual background of the fraud *** that were not publicly disclosed," which relator obtained through a wrongful death lawsuit. *Moore & Co.*, 812 F.3d at 308.

¶ 55 In the case before us, the information relators claim materially added to the publicly disclosed documents from civil litigation provided immaterial details. Details regarding the replacement of light bulbs, an affidavit from a school board member about his recollection of a school board meeting, and statements from the former superintendent were not details that materially added any new information to the alleged fraud already publicly disclosed. The relator in *Moore* obtained information from a wrongful death action (civil hearing) between a *private*

- 24 -

*party* and a *public company*, thus avoiding the implication of this section of the public disclosure bar. The state or its agent was not a party to the lawsuit. Conversely, relators claim the information obtained which materially added to the previous publicly disclosed documents came from Open Meetings Act litigation against the Ball-Chatham school, a *state agency*. Accordingly, because we interpret this provision of the Public Disclosure Act "broadly to include allegations and information disclosed in connection with civil, criminal, or administrative litigation" (*Prudential Insurance*, 944 F.2d at 1156), even if this information materially added to information publicly disclosed, relators cannot avoid this section of the public disclosure bar.

¶ 56    From a procedural standpoint even if relators were an "original source" they were required to "voluntarily provide[ ] the information to the State before filing an action under this Section." 740 ILCS 175/4 (e)(4)(B) (West 2014).

¶ 57    "Besides giving the government more time than the post-filing period to act on the fraud allegations, this requirement also gives the government the chance 'to consider whether there has already been public disclosure of the matters, whether the prospective relator in fact possesses direct and independent knowledge of the matters he is disclosing, and whether he is making disclosures on a voluntary basis.' " *United States ex rel. King v. Hillcrest Health Center, Inc.*, 264 F.3d 1271, 1281 (quoting *Ackley*, 76 F. Supp. 2d at 668.)

¶ 58    There is no specific time frame requirement when relators must voluntarily disclose the information to the state; however, there must be enough time for the state to engage in its own investigation of the alleged fraud. Thirty days before the filing of a suit is reasonable in most cases; however, a few moments, hours, or days before the suit is filed is not sufficient for voluntary disclosure. *Ackley*, 76 F. Supp. 2d at 668, *abrogated on other grounds by Fadlalla*, 402 F. Supp. 3d 162.

¶ 59         Here, counsel for relators notified a representative of the Attorney General's office, via phone, one day prior to the filing of the complaint. Counsel sent an e-mail with a copy of the complaint to the Attorney General's office approximately one hour before filing it. This does not comport with the requirement of "voluntary disclosure" and failed to give the Attorney General's office sufficient time to investigate the claim or ascertain whether relators were genuine whistleblowers with direct independent knowledge of their claims. It is clear from the case law that advance notice is not merely a formality to be met in a perfunctory manner but has a very real purpose—to allow the attorney general to fully investigate the claim, determine whether perhaps it is something he should pursue, or decide whether relators are in a position to do so. See *Scachitti*, 215 Ill. 2d at 511-12 (discussing the broad authority the attorney general has in *qui tam* actions under the Act).

¶ 60                          D. Unless Opposed by the State

¶ 61         The public disclosure bar requires the court to dismiss a claim, unless "the State" opposes the dismissal. 740 ILCS 175/4(e)(4)(A) (West 2014). Relators claim their two affidavits from the Ball-Chatham and Taylorville school districts should not have been stricken by the trial court because the school districts constitute "the State," and their opposition to the dismissal of relators' claim abrogates the mandatory dismissal provision of the public disclosure bar. As noted by defendant, the passing of these resolutions appears to be a superficial effort to circumvent the requirements of the statute, was undertaken during the litigation, and has no legal support. In fact, it was this one aspect of relators' litigation which precipitated the attorney general's involvement. The attorney general had already reviewed the claims and found his office was not interested in intervening, but it did so when relators either misunderstood or misinterpreted the meaning of "the State" in the context of the statute. The two resolutions filed

- 26 -

by relators in May 2017, long after litigation began, as part of their "reply in support of their motion for summary judgment and response in opposition to defendant's motion for summary judgment," were uncertified resolutions from both school districts objecting to the dismissal of the claims. Defendant contends the districts are not parties to the litigation, the "resolutions" were not brought properly before the court and contain inadmissible hearsay, and only the attorney general has the authority to oppose the dismissal of the case under the Act.

¶ 62     The attorney general, while taking no position on the merits of relators' claims, filed a statement of interest, maintaining the attorney general is "the State" under the public disclosure bar and has the sole authority to oppose the dismissal of a claim, as he has exclusive control of *qui tam* litigation.

¶ 63     In April 2018, the trial court properly granted defendant's motion to strike "resolutions" one and two. The court reasoned, in part, the school districts have no authority to oppose the dismissal of a *qui tam* action under the Act, making their "resolutions" irrelevant.

¶ 64     Relators incorrectly relied upon the First District decision in *Lyons Township*, 2017 IL App (1st) 161574, to argue the allegedly defrauded entity may be "the State" within the meaning of the statute and thereby has the authority to oppose dismissal of a claim under the public disclosure bar. The First District in *Lyons Township* held the defrauded unit of government is "the State" for purposes of deciding what constituted a "State report" under the public disclosure bar. *Lyons Township*, 2017 IL App (1st) 161574, ¶ 14. *Lyons Township* did not address the issue of who had authority to object to dismissal under an entirely different provision within the Act. It was not an issue in the case, and the court said nothing about changing or modifying the authority of the attorney general to object.

¶ 65        Under the Act, the Attorney General "retains authority to control the litigation at every stage of the proceedings." *Scachitti*, 215 Ill. 2d at 510-11. Our supreme court held in *Scachitti* that the Act's *qui tam* provision is constitutional only because it grants the attorney general authority to intervene at any stage of the proceedings. *Scachitti*, 215 Ill. 2d 484 at 510-11. Allowing another governmental entity to oppose the mandatory dismissal would, in effect, usurp the power of the attorney general. This cannot be a feasible interpretation of the holding in *Lyons Township*, nor its intent, as the First District's analysis did not include such a discussion. Furthermore, our supreme court has made it clear the attorney general, as the chief executive officer of the state, can be the only authority to object to the court's dismissal under the public disclosure bar. "*No one but the Attorney General* may intervene in the action, and the Attorney General retains the right to intervene in the lawsuit at any time." (Emphasis added.) *Scachitti*, 215 Ill. 2d at 511.

¶ 66        Finally, relators argue that even if their claim falls under the public disclosure bar and they do not qualify as original sources, their claim should not be dismissed because their suit is not "parasitic" in nature. We decline to undertake such an analysis as the public disclosure bar clearly provides that if a relator fails to overcome the bar, "[t]he court *shall dismiss* an action or claim under [the Act], unless opposed by the State ***." (Emphasis added.) 740 ILCS 175/4(e)(4)(A) (West 2014).

¶ 67                              E. Knowingly False

¶ 68        Lastly, although not absolutely essential to our analysis, perhaps it goes without saying, but an additional necessary element of a relator's claim is that it must be based on a "knowing" falsehood. Under the Act, liability attaches only if a defendant "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the State. 740

- 28 -

ILCS 175/3(a)(1)(A) (West 2014). "Knowingly" is defined as: (1) actual knowledge, (2) deliberate ignorance of the truth or falsity of the information, or (3) reckless disregard for the truth or falsity of the information. 740 ILCS 175/3(b)(1) (West 2014). Throughout the proceedings before the trial court, relators had to acknowledge the issue with regard to "guaranteed savings" versus "stipulated savings" was one for which there was no legal precedent and for which there could be a difference of opinion. During their depositions, relators were asked whether this issue was one for which they had legal authority, and they acknowledged there was none. When asked for any evidence of knowledge or knowingly false representations, the relators could only opine the representatives of defendant or the district representatives advocating the contracts with defendant "had to know" the representations were not true or were somehow violative of state law. Without actual evidence of a false or fraudulent representation, relators' claim was destined to fail anyway. See *People ex rel. Beeler, Schad & Diamond, P.C. v. Relax the Back Corp.*, 2016 IL App (1st) 151580, ¶ 19, 65 N.E.3d 503 (plaintiff must prove a false claim was done so knowingly by defendant to a government entity for the purpose of avoiding a financial obligation to the government).

¶ 69 Based upon this record and for the reasons stated, we find the trial court properly granted defendant's motion for summary judgment. The court's order striking relators' exhibits was proper as well.

¶ 70       III. CONCLUSION

¶ 71 For the reasons stated, we affirm the trial court's judgment.

¶ 72 Affirmed.